J-S56039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM MCRAE, | |
| Appellant | No. 2572 EDA 2016 |

Appeal from the Judgment of Sentence July 22, 2016
in the Court of Common Pleas of Monroe County
Criminal Division at Nos.: CP-45-CR-0000152-2014
CP-45-CR-0000153-2014

BEFORE:  BOWES, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED DECEMBER 06, 2017**

Appellant, William McRae, appeals from the judgment of sentence imposed on July 22, 2016, following his jury conviction, in two consolidated cases, of one count each of murder in the first degree, conspiracy, robbery, unlawful restraint, theft by unlawful taking, receiving stolen property, and tampering with evidence, and his non-jury conviction of prohibited possession of a firearm.[1]  On appeal, Appellant challenges the denial of his motion for a mistrial, various evidentiary rulings of the trial court, and the denial of his

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2501, 903, 3701, 2902, 3921, 3925, 4910, and 6105, respectively.

motion to suppress his statements to the police. For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's October 17, 2016 opinion, and our independent review of the certified record.

On July 31, 201[3], the Pocono Mountain Regional Police Department (hereinafter "PMRPD") responded to a report of an injured man. The PMRPD arrived at the Emerald Lakes Estates residence and found Gerald Rothbart bleeding from his head, with his hands zip–tied behind his back. Rothbart had responded to a Craigslist personal ad, which he believed to be an [eighteen]-year-old female soliciting sex. However, upon his arrival to meet the "female" at a wooded area in Emerald Lakes, two males attacked Rothbart. One of the males wielded an aluminum baseball bat and struck Rothbart multiple times. The males took Rothbart's wallet, money, and credit cards.

On August 6, 2013, a PMRPD patrol officer in Emerald Lakes reported a Nissan Altima with its rear window blown out and a deceased male inside. The male was identified as Brandon Fraser,[2] who was lying face down in the back of the car, dead from a gunshot wound to the back of the head. Through investigation it was revealed that Fraser masterminded the robbery of Rothbart. Fraser had posted the Craigslist ad, and had texted with Rothbart for approximately one month, posing as the [eighteen]-year-old female.

On August 7, 2013, as part of the robbery investigation, PMRPD executed a search warrant on Appellant's house. Appellant shared the house with his mother, Sharon McRae-Coe. Ms. McRae-Coe had informed the PMRPD that her home had a video surveillance system and that Fraser was in her house on July 31, 2013. After observing the surveillance video obtained from

---

[2] The victim's name is occasionally spelled "Frazier" in the certified record. (**See e.g.**, N.T. Trial, 5/10/16, at 109). As the spelling "Fraser" is used the majority of the time, and as this is the version used by the parties, in the interest of continuity, we will use that spelling.

Appellant's residence, PMRPD found that the footage implicated Appellant, Fraser, and Emily Woodman in a conspiracy to commit the robbery of July 31, 2013. Based on this footage, the PMRPD executed another search warrant on Appellant's residence.

On August 11, 2013, a criminal complaint was filed charging Appellant with three counts of [r]obbery, two counts of [c]riminal [c]onspiracy to [c]ommit [r]obbery, and one count each of [a]ggravated [a]ssault, [u]nlawful [r]estraint, [t]heft by [u]nlawful [t]aking, [r]eceiving [s]tolen [p]roperty, and [p]ossessing [i]nstruments of a [c]rime. A warrant was issued for Appellant's arrest in connection with the robbery of Rothbart. In order to locate Appellant, PMRPD arranged for the wiretap of several phone conversations between Appellant and Kwaku Sims. These wiretaps were conducted with Sims' consent. The PMRPD learned from these conversations that Appellant was in New York.

On August 19, 201[3], the U.S. Marshall's Office arrested Appellant and took Appellant into custody to await extradition. That same day, Appellant had retained Attorney Lamb to represent him in New York. Also on August 19, 2013[,] Lieutenant Chris Wagner and Detective Sargent Kenneth Lenning of the PMRPD went to New York to interview Appellant for the first time. Appellant's attorney was not present during the interview, but Detective Sargent Lenning verbally advised Appellant of his **Miranda**[3] rights. [Appellant signed a waiver of his **Miranda** rights and made a statement to the police.]. . . .

\*　　\*　　\*

On December 18, 2013, Appellant waived extradition and was returned to Pennsylvania. That same day, a new criminal complaint was filed against Appellant charging him with one count each of [c]riminal [h]omicide, [t]ampering with [p]hysical [e]vidence, and [p]rohibited [p]ossession of a [f]irearm. After arraignment before Magisterial District Judge Richard Claypool, Appellant was held without bail.

Also on December 18, 2013, but before he was arraigned, PMRPD interviewed Appellant for a second time, this time at PMRPD headquarters. Lieutenant Wagner was again present,

_____

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

accompanied by Detective Christopher Boheim. Appellant was properly **_Mirandized_** and Appellant never made any clearly articulated invocation of his **_Miranda_** rights.

On January 21, 2014, the criminal complaints from August 11, 2013 and December 18, 2013 were consolidated into a single hearing before MDJ Claypool, who held all charges for [the trial c]ourt. On January 30, 2014, the Commonwealth filed [c]riminal [i]nformation[]s for both matters. Pursuant to Pa.R.Crim.P. 582(B)(1), on February 10, 2014 notice was given to the Appellant that the above-captioned cases were joined for trial.

On July 2, 2014, Appellant filed an [o]mnibus pretrial motion. A hearing on said [m]otion was held on August 25, 2014 and [the trial c]ourt issued its [o]pinion on January 20, 2015. On December 16, 2015, Appellant filed a motion to sever the two cases. A hearing was scheduled on December 21, 2015. [The trial c]ourt issued its [o]pinion denying Appellant's motion to sever on March 4, 2016.

Appellant filed supplemental pretrial motions on April 5, 2016, requesting: 1) [the trial court] preclude the Commonwealth from introducing evidence about "the facts and circumstances surrounding the Appellant's conviction for [b]urglary in 11/04/09;" 2) [s]everance, and a bench trial of the offense of [p]ersons not to [p]ossess a [f]irearm; 3) the Commonwealth be precluded from introducing the certified records from Joseph Harrigan of his [w]ritten [j]uvenile [a]llegation, [a]dmission [f]orm, [a]djudicatory [h]earing [o]rder, and [s]tatement of [f]acts; 4) [the trial court] preclude the Commonwealth from introducing any evidence of the pending assault charges; and 5) a continuance. After conference and submission of memoranda of law in support of their respective positions, [the trial court] granted Appellant's motion[]s to exclude evidence of his burglary and his subsequent assault charge. [The trial court] further granted Appellant's severance request but denied his continuance request. By stipulation of counsel, the Commonwealth agreed to not introduce the certified records of Joseph Harrigan.

[At trial, Enrique Perez testified that he was involved in a feud with Appellant over monies he claimed Appellant owed him for damaging his motorcycle. (**_See_** N.T. Trial, 5/11/16, at 33-36). He stated that, on the evening of July 18, 2013, a car drove up to his home and beeped, a woman passed him an object wrapped in

toilet paper and said, "[t]his is compliments of Will." (***Id.*** at 33). Appellant was the only Will that Mr. Perez was engaged in a dispute with. (***See id.***). The object was a shell. (***See id.***). Mr. Perez reported the incident to the police. (***See id.*** at 36-37). He described the woman as being mixed race, light-skinned Hispanic and African-American. (***See id.*** at 39).

PMRP Patrol Officer Jeff Papi testified and confirmed that Mr. Perez reported the incident to him and gave him the shell in question. (***See id.*** at 43-44). Office Papi stated that Appellant's description of the person he was feuding with and the address he gave him matched Appellant. (***See id.*** at 44-45). Officer Papi was unable to identify the female who delivered the shell. (***See id.*** at 45). Later ballistic testing confirmed that the shell matched those in the murder weapon. (***See*** N.T. Trial, 5/10/16, at 6-7).

The Commonwealth was unable to locate the Hispanic-looking female in question. (***See id.*** at 8). Approximately, two weeks before trial, during trial preparation with cooperating witness, Jacqueline Harrigan, the Commonwealth asked her if she could identify the female. (***See id.***). Ms. Harrigan volunteered that she was the woman in question, explaining that she tans quite darkly in the summer and looked Hispanic. (***See id.***). After the commencement of trial, the Commonwealth disclosed this information to defense counsel, who objected to its admission. (***See id.*** at 6-9). However, the trial court allowed the testimony. (***See id.*** at 9)].

On May 16, 2016 Appellant was convicted by jury of [the above-cited offenses]. . . . Appellant was acquitted of [r]obbery—[i]nfliction of [s]erious [b]odily [i]njury and [a]ggravated [a]ssault.

On July 22, 2016 Appellant was sentenced in case No. 153 CR 2014 and 152 CR 2014 of life imprisonment without the possibility of parole followed by a period of incarceration of [not less than two hundred and sixty-four nor more than five hundred and twenty-eight months]. Appellant filed the current appeal on August 16, 2016 and filed his [c]oncise [s]tatement of [errors] [c]omplained of on [a]ppeal on September 6, 2016. [***See*** Pa.R.A.P. 1925(b). On October 17, 2016, the trial court issued an opinion. ***See*** Pa.R.A.P. 1925(a).]

(Trial Court Opinion, 10/17/16, at 1-6) (footnotes omitted).

On appeal, Appellant raises the following questions for our review:

A.     Whether the [c]ourt erred in denying Appellant's [m]otion for [m]istrial after the Commonwealth admitted 404(b) [c]haracter [e]vidence]; [c]rimes or [o]ther [a]cts despite the [c]ourt's previous ruling which granted Appellant's [m]otion *in* [*l*]*imine* precluding 404(b) [c]haracter [e]vidence[?]

B.     Whether the [c]ourt erred in allowing the Commonwealth to admit intercepted telephone calls between Appellant and Kwaku Sims[?]

C.     Whether the [c]ourt erred in allowing the Commonwealth to admit statements of Appellant made during custodial interrogations on August 19, 2013 and December 18, 2013[?]

D.     Whether the [c]ourt erred by allowing the Commonwealth to introduce the testimony of Jaqueline Harrigan identifying herself as the "Hispanic" looking female that delivered a [shell] where said testimony was not provided to Appellant via discovery until after the commencement of trial[?]

(Appellant's Brief, at 9).

In his first issue, Appellant contends that the trial court erred in denying his motion for a mistrial after the Commonwealth introduced prior bad act testimony in violation of its previous grant of Appellant's motion *in limine* precluding evidence regarding Appellant's prior conviction for burglary. (**See** *id.* at 17-18).  For the reason discussed below, we find that Appellant waived this claim.

The following standards govern our review of the denial of a motion for mistrial:

In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at

trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Jaynes*, 135 A.3d 606, 615 (Pa. Super. 2016), *appeal denied*, 145 A.3d 724 (Pa. 2016) (citation omitted). "A mistrial is an extreme remedy that is required only where the challenged event deprived the accused of a fair and impartial trial." *Commonwealth v. Smith*, 131 A.3d 467, 475 (Pa. 2015), *cert. denied*, 137 S.Ct. 46 (2016) (citation omitted). "The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion." *Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa. Super. 2008), *appeal denied*, 966 A.2d 571 (Pa. 2009) (citation omitted).

In the instant matter, the objected to statement took place during the playing of an audio version of Appellant's August 7, 2013 interview with PMRPD. (*See* N.T. Trial, 5/05/16, at 64-65). Thus, the objected to statement

is not of record.[4]  (*See id.*).  Appellant did not immediately object to the statement but, instead, waited until the jury had been excused for lunch and then moved for a mistrial.  (*See id.* at 70).  Thus, this Court is only able to determine the content of the statement from the precis provided by counsel during argument on the issue.  (*See id.* at 70-71, 77-79).  In his brief, Appellant does not provide the text of the objected-to statement.  (*See* Appellant's Brief, at 17-18).  While the Commonwealth, in its brief, and the trial court, in its opinion, are more specific, neither quotes to a transcript of the actual interview but instead cite to the argument mentioned above.  (*See* Commonwealth's Brief, at 4-7; Trial Ct. Op., 10/17/16, at 7-8).

We have stated "[w]hen the appellant . . . fails to conform to the requirements of [Pa.R.A.P.] 1911 [relating to transcript requests], any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review." ***Commonwealth v. Preston***, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*), *appeal denied*, 916 A.2d 632 (Pa. 2007) (citation omitted).  Further, it is the appellant's responsibility to make certain that the certified record contains all items necessary to ensure that this Court is able to review his claims.  ***See***

_____

[4] This Court made an unsuccessful inquiry to the trial court in an attempt to obtain the transcript of the August 7, 2013 interview.  We have also examined Appellant's request for transcripts and he did not seek to have this interview transcribed.  (***See*** Request for Transcripts, 8/16/16, at 1).

- 8 -

*Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa. Super. 2008) (*en banc*).

This Court has stated:

> It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in the case. It is also well-settled in this jurisdiction that it is Appellant's responsibility to supply this Court with a complete record for purposes of review. A failure by appellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of the issue sought to be examined.

*Commonwealth v. Martz*, 926 A.2d 514, 524-25 (Pa. Super. 2007), *appeal denied*, 940 A.2d 363 (Pa. 2008) (citations and quotation marks omitted). In *Commonwealth v. O'Black*, 897 A.2d 1234 (Pa. Super. 2006), we found waiver after noting that the trial transcript was not in the reproduced or certified record and that our attempt to find the transcript had been unavailing. *See O'Black*, *supra* at 1238.

An appellant's failure to ensure that the original record as certified for appeal contains sufficient documentation to enable the court to conduct a proper review constitutes a waiver of the issues sought to be reviewed on appeal. *See Growall v. Maietta*, 931 A.2d 667, 676 (Pa. Super. 2007), *appeal denied*, 951 A.2d 1164 (Pa. 2008); *see also Smith v. Smith*, 637 A.2d 622, 623-24 (Pa. Super. 1993), *appeal denied*, 652 A.2d 1325 (Pa. 1994). Accordingly, we find that Appellant's failure to request transcription of the August 7, 2013 interview, waived his first issue on appeal.

Moreover, even if Appellant had provided the necessary transcript, we would still find this issue waived because Appellant's argument is

undeveloped. His argument on this issue consists of three brief paragraphs. (*See* Appellant's Brief, at 17-18). The first paragraph is boilerplate law concerning the admission of character evidence and the trial court's standard for granting a mistrial. (*See id.* at 17). The second paragraph is an inadequate discussion of Appellant's motion *in limine* and the trial court's order granting it. (*See id.* at 17-18). The third paragraph consists of a single conclusory sentence that the Commonwealth played a portion of Appellant's interview with the police that outlined his prior criminal conduct. (*See id.* at 18). Appellant never attempts to apply the law to the facts of the case, never discusses how the trial court's ruling on his motion *in limine* covers the statement in questions,[5] or explains how a reference to his prior criminal activity, made during the course of a two-hour interview played in a trial that lasted nearly two weeks, so prejudiced him as to require the extreme remedy of a grant of a mistrial.

We have stated:

---

[5] We note that this Court has reviewed Appellant's supplemental pretrial motion, wherein he sought to exclude any reference to any "facts and circumstances surrounding [Appellant's] conviction for Burglary (F-1) [on November 4, 2009]." (Appellant's Supplemental Pretrial Motion, 4/05/16, at 3). We have also reviewed the transcript of oral argument on this issue, (*see* N.T. Hearing, 4/06/16, at 2-28), as well as the argument made during Appellant's motion for a mistrial (*see* N.T. Trial, 5/05/16, at 70-79), to the extent we can make a determination, it is not at all apparent that Appellant moved to exclude the statements made during the August 7, 2013 interview or that they were covered by the trial court's ruling. (*See* Supplemental Pretrial Motion at 3; N.T. Hearing, 4/06/16, at 2-28, N.T. Trial 5/05/16, at 70-79).

> In an appellate brief, parties must provide an argument as to each question, which should include a discussion and citation of pertinent authorities. Pa.R.A.P. 2119(a). . . . This Court is neither obliged, nor even particularly equipped, to develop an argument for a party. ***Commonwealth v. Williams***, 566 Pa. 553, 577, 782 A.2d 517, 532 (2001) (Castille, J., concurring). To do so places the Court in the conflicting roles of advocate and neutral arbiter. ***Id.*** When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. ***Commonwealth v. Luktisch***, 680 A.2d 877, 879 (Pa. Super. 1996). . . .

***B.D.G.***, ***supra*** at 371-72. Thus, failure to cite case law or other legal authority in support of an argument results in waiver of the claim. ***See Commonwealth v. Liston***, 941 A.2d 1279, 1285 (Pa. Super. 2008) (*en banc*), *affirmed in part and vacated in part*, 977 A.2d 1089 (Pa. 2009); Pa.R.A.P. 2101. Thus, even if Appellant had provided a transcript of the August 7, 2013 interview, we would have found the claim waived based upon his undeveloped argument. ***See B.D.G.***, ***supra*** at 371-72.

In his second claim, Appellant argues that the trial court erred in denying his motion to suppress consensual telephone intercepts between himself and cooperating witness Kwaku Sims because 18 Pa.C.S.A. § 5704, is unconstitutional.[6] (***See*** Appellant's Brief, at 18-24). We disagree.

Our standard of review is settled:

> [w]hen an appellant challenges the constitutionality of a statute, the appellant presents this Court with a question of law. Our

_____

[6] Although Appellant challenges the constitutionality of a statute, he need not notify the Attorney General, as the Commonwealth is a party to this matter. ***See*** 201 Pa. Code § 521.

consideration of questions of law is plenary. A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution. Thus, the party challenging the constitutionality of a statute has a heavy burden of persuasion.

**Commonwealth v. Beaman**, 846 A.2d 764, 768 (Pa. Super. 2004), *affirmed*,

880 A.2d 578 (Pa. 2005) (citation omitted).

18 Pa.C.S.A. § 5704 provides, in relevant part:

It shall not be unlawful and no prior court approval shall be required under this chapter for:

* * *

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where:

* * *

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be initiated, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however, such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception

- 12 -

shall be the custodian of recorded evidence obtained therefrom[.]

18 Pa.C.S.A. § 5704(2)(ii).

Here, Appellant does not dispute that the intercepts were made in accordance with this statute, but rather alleges that the statute violates Appellant's "right to privacy under the Fourth Amendment of the United States Constitution and Article I, § 8 of the Pennsylvania Constitution." (Appellant's Brief, at 18). We disagree.

In disposing of this issue, the trial court addressed, and properly rejected, Appellant's claim, stating:

> Article I, Section 8 of the Pennsylvania Constitution requires that searches and seizures by the Commonwealth be permitted only upon obtaining a warrant based upon probable cause issued by a neutral and detached magistrate. [*See*] *Com. v. Labron*, 669 A.2d 917, 920 (Pa. 1995)[, *reversed on other grounds by*, *Pennsylvania v. Labron*, 518 U.S. 9328 (1996)]. Thus, generally, searches and seizures conducted without a prior determination of probable cause are unreasonable for constitutional purposes. [*see i*]*d.* However, the probable cause requirement only applies to situations in which the citizen possesses a reasonable expectation of privacy in the item searched or seized. [*See*] *Com. v. DeJohn*, [403 A.2d 1283, 1289 (Pa. 1979), *cert. denied*, 444 U.S. 1032 (1980)]. Therefore, we must determine whether [Appellant] had a reasonable expectation of privacy.
>
> The Pennsylvania Supreme Court has stated that the concurring opinion of Justice Harlan in *Katz v. United States*, [389 U.S. 347 (1967)] "sets forth the foundation for both federal and Pennsylvania constitutional law analysis with respect to constitutionally-protected privacy expectations." *Com. v. Rekasie*, 778 A.2d 624, 628 ([Pa.] 2001). The test is: (1) whether [Appellant] exhibited an actual subjective expectation of privacy, and (2) whether that expectation is one that society is prepared to recognize as reasonable. [*See I*]*d.* [()*citing Katz*,

- 13 -

*supra* at 361-62 (Harlan, J., concurring)[)]. Notably, the Court in *Rekasie* highlighted that information that is voluntarily disclosed does not track federal constitutional jurisprudence; insofar as it does not automatically render it unprotected. [*See i*]*d.* at 630 ("under Pennsylvania Constitutional jurisprudence, it is manifest that a citizen's expectation of privacy can extend, in some circumstances, to information voluntarily disclosed to others.").

The Pennsylvania Supreme Court already addressed the constitutionality of not requiring a warrant for one party consensual interceptions in *Rekasie*.

> In this appeal, our court revisits the area of one party consensual wire interceptions. The sole issue before our court is whether Article I, Section 8 of the Pennsylvania Constitution requires the Commonwealth to obtain a determination of probable cause by a neutral, judicial authority before an agent of the Commonwealth may initiate a telephone call to an individual in his home and record that conversation.

*Rekasie*, [*supra* at] 625. They held an individual does not have a reasonable expectation of privacy that their telephone conversation would be free from monitoring and thus the Pennsylvania Constitution does not require a determination of probable cause for one party consensual wire interceptions. [*See i*]*d.* The facts of *Rekasie* are as follows:

> Pursuant to an ongoing drug investigation, agents of the Attorney General's Office seized cocaine from Tubridy. Tubridy told the agents that Rekasie was a drug courier and agreed to participate in an investigation of Rekasie and consented to have his telephone conversations with Rekasie taped. In accordance with the Wiretapping and Electronics Surveillance Control Act (the "Act"), Tubridy voluntarily consented to the recording of his conversations with Rekasie. Tubridy twice called Rekasie at Rekasie's home and based on those intercepts, a search warrant was issued which permitted the Attorney General's office to seize and search Rekasie's luggage while he was disembarking from an airplane flight from Fort Lauderdale, Florida to Pittsburgh, Pennsylvania. The search revealed just under a pound of cocaine. Rekasie was subsequently charged with possession with intent to

deliver a controlled substance, possession of a controlled substance and criminal conspiracy. Rekasie filed a motion to suppress on the ground that his constitutional rights had been violated by the interceptions. A suppression hearing was held in which the Commonwealth presented evidence that it had permission to record the conversations pursuant to section 5704(2)(ii) of the Act.

The trial court initially denied the motion to suppress. After reconsideration, however, the court granted the motion on the basis of **Com. v. Brion**, [652 A.2d 287 (Pa. 1994) (Pennsylvania Constitution requires determination of probable cause by neutral judicial authority before Commonwealth may conduct electronic interception of face-to-face conversation in one's home by individual wearing body wire)]. The Superior Court reversed holding that **Brion** was limited to the use of a body wire by a confidential informant in the home of a defendant and did not apply to the interception of telephone conversations.

The Supreme Court granted *allocatur* to determine whether our Commonwealth's Constitution requires that the Commonwealth obtain a probable cause determination from a neutral judicial authority before it may monitor a telephone conversation between a cooperative informant and another individual.

The Supreme Court, applying the **Katz** privacy expectation test found that while Rekasie might have possessed an actual or subjective expectation of privacy, because of the nature of telephonic communication, it is not an expectation that society was willing to accept as objectively reasonable.

> []A telephone call received by or placed to another is readily subject to numerous means of intrusion at the other end of the call, all without the knowledge of the individual on the call. Extension telephones and speakerphones render it impossible for one to objectively and reasonably expect that he or she will be free from intrusion. The individual cannot take steps to ensure that others are excluded from the call. Based upon these realities of telephonic communication, and the fact that Rekasie could not reasonably know whether Tubridy had consented to police seizure of the contents of the conversation, we

> hold that Rekasie did not harbor an expectation of privacy in his telephone conversation with Tubridy that society is willing to recognize as reasonable.[]

*Rekasie*, [*supra* at] 631. Thus, the Commonwealth was not required to obtain a determination of probable cause by a neutral judicial authority prior to monitoring the telephone conversation between Rekasie and the confidential informant Tubridy.

In [*Brion*, *supra*], the Supreme Court held that the Pennsylvania Constitution requires a warrant before police may send a confidential informant into one's home with a body wire to record a conversation with the defendant. [*Brion*, *supra* at 287]. They determined that interceptions of oral conversation within one's home could only pass constitutional muster if a neutral judicial authority makes a prior determination of probable cause. *Brion* is distinguished form *Rekasi* and the case currently before us because a face-to-face interchange occurring solely within the home is substantially different than a conversation, on a telephone call; where an individual has no ability to create an environment in which they can reasonably be assured that the conversation is not being recorded by another party. On the telephone, one can never be sure who is actually listening on the other end.

> []Thus, while society may certainly recognize as reasonable a privacy expectation in a conversation carried on face-to-face within one's home, we are convinced society would find that an expectation of privacy in a telephone conversation with another, in which an individual has no reason to assume the conversation is not being simultaneously listened to by a third party, is not objectively reasonable[].

*Rekasie*, [*supra* at] 632.

As the Pennsylvania Supreme Court has already decided the constitutionality of not requiring a warrant for one party consensual interceptions under the *Katz* test, we find no compelling reason to reach a contrary resolution of this issue. A defendant's expectation of privacy in a telephone conversation with another is not one that society is prepared to recognize as objectively reasonable, therefore [Appellant's] motion to suppress is denied.

(Trial Ct. Op., 1/20/15, at 5-9) (footnotes omitted some citation formatting provided).

Moreover, we are unpersuaded by Appellant's contention that the United States Supreme Court's decision in *Riley v. California*, 134 S.Ct. 2473 (2014), necessitates a revisiting of this settled law. (*See* Appellant's Brief, at 22-24). In *Riley*, the United States Supreme Court held that when a cell phone is recovered during a search incident to arrest, police must obtain a warrant before searching the contents of the cell phone. *See Riley*, *supra* at 2485. We see nothing in *Riley*, which persuades us that the Supreme Court intended to apply its holding outside of the context of searches incident to arrest or that it in any way implies that the decision had any impact whatsoever with respect to a consensual wiretap.

Moreover, in a recent case, *Commonwealth v. Diego*, 119 A.3d 370 (Pa. Super. 2015) (*en banc*), *appeal denied*, 129 A.3d 1240 (Pa. 2015), this Court specifically refused to extend *Riley* outside of that context. In *Diego*, a cooperating witness set up a drug deal with the defendant by using the text messaging service on his iPad, while police officers watched him and read the messages. *See id.* 372-73. After a hearing, the trial court suppressed the evidence. *See id.* at 373. The Commonwealth appealed. *See id.* On appeal, a panel of this Court reversed, specifically rejecting the appellee's argument that "he possessed a heightened expectation of privacy" pursuant to *Riley*. *Id.* at 377; *see id.* at 377-78. We stated:

Here, Appellant's reliance on **Riley** is simply misplaced. The police did not obtain the contents of Appellant's text message conversation with [the cooperating witness] by searching Appellant's phone incident to his arrest. . . . Thus, the heightened expectation of privacy recognized in **Riley**, is not applicable to this case.

*Id.* at 378. Thus, we find that the trial court did not commit an error of law in declining to find that 18 Pa.C.S.A. § 5704 is unconstitutional. Appellant's second issue lacks merit.

In his third issue, Appellant contends the trial court erred in denying his motion to suppress statements made to the police during his August 19, 2013 and December 18, 2013 interviews. (**See** Appellant's Brief, at 24-28). In a case involving an appeal from the denial of a motion to suppress:

[our] standard of review . . . is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

**Commonwealth v. Randolph**, 151 A.3d 170, 175 (Pa. Super. 2016), *appeal denied*, 2017 WL 1734370 (Pa. filed May 2, 2017) (citation omitted). However, we are constrained to find the issue waived.

In the instant matter, like the August 7, 2013 interview, the August 19, and December 18, 2013 interviews with PMRPD are not transcribed and Appellant did not request that they be transcribed. (*See* N.T. Suppression Hearing, 8/25/14, at 4-48; Request for Transcripts, 8/16/16, at 1). Again, this Court sought to obtain transcriptions from the trial court but was unsuccessful. It appears from our review of the trial court opinion and both parties' briefs, that the tapes contain pertinent discussion surrounding Appellant's ultimate decision to waive his *Miranda* rights.[7] (*See* Appellant's Brief, at 24-28; Commonwealth's Brief, at 16-25; Trial Ct. Op., 1/20/15, at 3-4, 9-16).

In its ruling, while the trial court does quote from the relevant portion of the August 19, 2013 interview, it admits that its description of the conversation is based upon a poor quality audio recording and it constitutes "[the trial court's] best interpretation of the tape[;]" while it references the December 18, 2013 interview, it does not directly quote from it. (Trial Ct. Op., 1/20/15, at 3 n.11; *see also id.* at 9-16). In his statement of the case, Appellant occasionally quotes from DVDs of the August 19, 2013 and December 18, 2013 interview. (*See* Appellant's Brief, at 13-14). There is no DVD contained in the certified record and it is not clear if this DVD is identical

---

[7] After making inquiry of the trial court, this Court was able to obtain copies of Appellant's written waiver of his *Miranda* rights. (*See* N.T. Suppression Hearing, 8/25/14, at Commonwealth's Exhibits seven and eight).

to the audio recording listened to by the trial court. The Commonwealth also quotes from a portion of the August 19, 2013 interview, but its citation is to the trial court's January 20, 2015 opinion, which as noted above is the trial court's best guess of what was said during that interview. Absent transcription, this Court has no means to assess the accuracy of Appellant's quotations from the interviews or the trial court's interpretation of what was said during the August 19, 2013 interview.

As discussed above, it is Appellant's responsibility to ensure that the certified record is complete. *See B.D.G.*, *supra* at 372. Again we note, that "[i]n the absence of an adequate certified record, there is no support for an appellant's arguments and, thus, there is no basis on which relief could be granted." *Preston*, *supra* at 7. Accordingly, we are compelled to find that Appellant waived his third issue.

In his final claim, Appellant avers that the trial court erred in admitting witness Jacqueline Harrigan's testimony that she was the previously unidentified woman who gave a shell to witness Enrique Perez at Appellant's request. (*See* Appellant's Brief, at 28-32). Appellant claims that the Commonwealth failed to disclose this evidence in violation of the United States Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), and Pennsylvania Rule of Criminal Procedure 573(D).[8] We disagree.

---

[8] Pennsylvania Rule of Criminal Procedure 573 provides in pertinent part:

Initially we note our standard of review.  This Court has held that:

> With regard to evidentiary challenges, it is well established that [t]he admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error.  An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.  Furthermore, if in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Serrano*, 61 A.3d 279, 290 (Pa. Super. 2013) (citation and quotation marks omitted).

The law governing alleged *Brady* violations is settled.

> Under *Brady* and subsequent decisional law, a prosecutor has an obligation to disclose **all exculpatory information** material to the guilt or punishment of an accused, including evidence of an impeachment nature.  To establish a *Brady* violation, an appellant must prove three elements:  (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued.  The burden rests with the appellant to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution.  The evidence at issue must have

---

> **(D) Continuing Duty to Disclose.** If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

Pa.R.Crim.P. 573(D).

been material evidence that deprived the defendant of a fair trial. Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Ovalles*, 144 A.3d 957, 965 (Pa. Super. 2016) (citations and quotation marks omitted) (emphasis added). Here, the testimony in question by Jacqueline Harrigan was inculpatory, and, therefore, not governed by *Brady*. *See Commonwealth v. Maldonodo*, -- A.3d --, 2017 WL 4001659, at *3 (Pa. Super. Sept. 12, 2017) (*en banc*) (holding that *Brady* requires that evidence in question be favorable to accused); *Commonwealth v. Counterman*, 719 A.2d 284, 297 (Pa. 1998), *cert. denied*, 528 U.S. 836 (1999). Thus, Appellant's claim that the Commonwealth did not fulfill its obligations under *Brady* lacks merit.

In addition, the trial court correctly analyzed Appellant's claim that it should have disallowed the evidence because of the Commonwealth's violation of Pa.R.Crim.P. 573 as follows:

In [*Counterman*, *supra*], the Pennsylvania Supreme Court held that the Commonwealth had violated its disclosure duties under the Rules of Criminal Procedure[a] in a homicide trial where it failed to disclose inculpatory statements from the defendant's wife until after the commencement of trial. [*See*] *Counterman*, [*supra* at] 298. However, the Court also held that, despite the Commonwealth's failure to properly disclose this evidence, there was no trial court error in admitting same because the defendant did not demonstrate prejudice. *Id.* In coming to this conclusion, the Supreme Court discussed the trial court's "broad discretion in deciding the appropriate remedy for a discovery violation" and

that "a defendant seeking relief from a discovery violation must demonstrate prejudice." *Id.*

> [a] The Supreme Court in **Counterman** cites to Rule 305(B) which is substantially the same as the present Rule 573(B). **Compare Counterman**, [*supra* at] 298 (citing Rule 305(B)) and Rule 573(B).

Like the defendant in **Counterman**, Appellant has failed to demonstrate how Ms. Harrigan's testimony worked to his prejudice. Independent of Ms. Harrigan's testimony, there was sufficient testimony, all of which had been provided to the Appellant in discovery, that Appellant sent a woman to deliver the shell casing in question to Enrique Perez. Mr. Perez testified that a Hispanic-looking female had approached his residence and delivered to him a shell casing wrapped in toilet paper with the message "[c]ompliments of Will." N.T., Trial, 5/11/16, pp. 33, 37-39. Mr. Perez additionally testified that the only "Will" he had problems with was Appellant. **See** N.T., Trial, 5/11/16, p. 33. Officer Papi further corroborated these statements when he testified that the description of the "Will" Mr. Perez had problems with and the description of where that individual lived both matched Appellant. N.T., Trial, 5/11/16, p. 44.

In light of this independent testimony, which had been included in pretrial discovery, Ms. Harrigan's statements were cumulative at best. The identity of the woman who delivered the shell casing to Mr. Perez is of no consequence-whomever she was, Ms. Harrigan or otherwise, she stated the shell casing was "Compliments of Will." Furthermore, Appellant was the only "Will" Mr. Perez had a problem with and that same shell casing was tied to the rifle used to kill Mr. Fraser. Appellant cannot show prejudice and this allegation of error is, therefore, without merit.[b]

> [b] [The trial court] also note[s] that even if [it] erred in admitting Ms. Harrigan's testimony, the Superior Court will consider any such error harmless where "erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence." **Commonwealth v. Miles**, 846 A.2d 132, 137-38 (Pa. Super. 2004) (*en banc*)[, *appeal dismissed*, 871 A.2d 1248 (Pa. 2005)] (citation omitted).

(Trial Ct. Op., 10/17/16, at 13-15) (some citation formatting provided).

We have thoroughly reviewed the parties' arguments and the testimony in question and agree that the trial court acted within its discretion to admit Ms. Harrigan's testimony. ***See Maldonodo***, ***supra*** at *3, ***Counterman***, ***supra*** at 298. As the trial court correctly notes, Ms. Harrigan's testimony was cumulative of that of Mr. Perez and Officer Papi. (***See*** N.T. Trial, 5/11/16, at 30-46; N.T. Trial, 5/12/16, at 16-18). Appellant has failed to show how he was prejudiced by this testimony, particularly in light of defense counsel's withering cross-examination about Ms. Harrigan's habit of dribbling out information to the Commonwealth in exchange for favorable treatment. (***See*** N.T. Trial, 5/12/16, at 83-93). Appellant's final claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2017

- 24 -