J-S51027-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SANTOS DIAZ | : | |
| | : | |
| Appellant | : | No. 559 MDA 2018 |

Appeal from the Judgment of Sentence December 18, 2017
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0000333-2016

BEFORE: PANELLA, P.J., GANTMAN, P.J.E., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.E.: **FILED OCTOBER 07, 2019**

Appellant, Santos Diaz, appeals from the judgment of sentence entered in the York County Court of Common Pleas, following his jury trial convictions for rape of a mentally disabled person, involuntary deviate sexual intercourse ("IDSI") of a mentally disabled person, and sexual assault.[1] We affirm.

The trial court opinion accurately set forth the relevant facts and procedural history of this case as follows:

> [Appellant's] jury trial took place between September 5, 2017 and September 8, 2017. The Commonwealth first presented the testimony of Melissa Leeper, who works for the Shadowfax Corporation, which provides services for mentally disabled persons. She testified as to the intellectual and developmental disabilities (IDD) of [Victim]. She described the care that [Victim] needed and how she would be unable to live on her own.

---

[1] 18 Pa.C.S.A. §§ 3121(a)(5); 3123(a)(5); 3124.1, respectively.

The Commonwealth then presented the testimony of [Victim]. She testified that [Appellant], who lived with her and her family…in York, Pennsylvania, raped her numerous times, penetrating her both vaginally and anally. She also testified that he told her not to tell anyone. The Commonwealth then called [V]ictim's sister, [C.C.] She testified that she took [V]ictim to the hospital on April 5th, 2015 to get a rape kit performed, because [V]ictim said [Appellant] was having sex with her. She testified that [V]ictim was very nervous when she told [C.C.] about what was occurring.

The Commonwealth presented testimony from K.D., a minor who was [V]ictim's cousin. She testified that she witnessed [Appellant] and [V]ictim having sex. Both of their pants were halfway down, and [Appellant's] penis was touching [V]ictim's butt. K.D. told [C.C.] what she saw. The Commonwealth next called Heidi Wilkerson, a Sexual Assault Forensic Examination (SAFE) nurse, who performed a SAFE exam on [V]ictim. [V]ictim told [Nurse] Wilkerson the last time she had sex with [Appellant] was 3 weeks prior to the SAFE exam. [Nurse] Wilkerson did not collect any physical evidence [or] note any genital injuries to [V]ictim, due to the extended period of time between her last sexual contact with [Appellant] and the SAFE exam.

The Commonwealth's next two witnesses, Terrae Fried (a certified school psychologist) and Ashley Rhem (a social worker with the Children's Advocacy Center), both testified as to the mental condition and intellectual disabilities of [V]ictim, and the interview processes taken to discuss the events with [V]ictim. The Commonwealth then presented the testimony of the affiant, Detective Kyle Hower. Detective Hower made contact with [V]ictim and various members of her family, and attempted to make contact with [Appellant] but was unsuccessful until he was taken into custody. After Detective Hower's testimony, the Commonwealth rested.

The [d]efense then put on its case, first presenting the testimony of [Appellant]. [Appellant] denied that he ever had any sexual contact with [V]ictim, that he was ever alone in a room with her, and that he was ever in a state of undress with [V]ictim. [Appellant] also testified that the

reason he was apprehended by federal marshals in New Jersey was because he went to New Jersey to fix [his] sister's car. He stated that this happened in the spring of 2015. The [d]efense also presented the testimony of [C.D.], [Appellant's] sister and [V]ictim's mother. [C.D.] testified that the family dynamic in the house…was normal, that everyone got along, and she had no knowledge of any illicit activity between [V]ictim and [Appellant]. After she was made aware of the allegations against [Appellant], she made him leave the house and he moved into an apartment she got for [Appellant]. She then testified that he left the apartment and the area "in the summer" of 2015. The [d]efense then rested, and the Commonwealth recalled Detective Hower on rebuttal, who testified that [Appellant] was apprehended in New Jersey and taken into custody in October of 2015, which was not the spring.

The jury retired to deliberate, and returned a verdict of guilty on all 3 counts [on September 8, 2017]. [Appellant] was sentenced [on December 18, 2017,] to [an aggregate] 18 to 36 years' incarceration. [Appellant timely filed post-sentence motions on December 22, 2017 and amended post-sentence motions on February 27, 2018, which the court denied following a hearing on February 28, 2018]. [Appellant] timely filed [a] notice of appeal [on March 23, 2018], and then submitted his [court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), on April 30, 2018].

(Trial Court Opinion, filed April 1, 2019, at 2-4) (internal citations omitted).

Appellant raises three issues for our review:

DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL CHALLENGING THE WEIGHT OF THE EVIDENCE AND GUILTY VERDICT ON THE CHARGES OF RAPE OF A MENTALLY DISABLED PERSON, INVOLUNTARY DEVIATE SEXUAL INTERCOURSE OF A MENTALLY DISABLED PERSON AND SEXUAL ASSAULT?

DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR MISTRIAL WHEN A COMMONWELATH WITNESS STATED DURING TESTIMONY

THAT THE ACTS FOR WHICH APPELLANT WAS CONVICTED "STARTED ABOUT A MONTH AFTER HE GOT OUT OF JAIL?"

DID THE TRIAL COURT ABUSE ITS DISCRETION IN SENTENCING APPELLANT TO NINE (9) TO EIGHTEEN (18) YEARS FOR RAPE OF A MENTALLY DISABLED PERSON AND A CONSECUTIVE NINE (9) TO EIGHTEEN (18) YEARS FOR INVOLUNTARY DEVIATE SEXUAL INTERCOURSE WITH A MENTALLY DISABLED PERSON WHERE THE SENTENCES IMPOSED EXCEEDED THE STANDARD SENTENCING RANGE OF 60 TO 78 MONTHS AND 90 MONTHS FOR THE AGGRAVATED RANGE?

(Appellant's Brief at 5).

In his first issue, Appellant argues Victim's testimony was "suspect" to the point of undermining the truth-determining process. Specifically, Appellant asserts Victim testified the assaults occurred on most weekends during the summer, which contradicted the Commonwealth's allegations that the assaults took place between November 1, 2014 and April 8, 2015. Appellant highlights Victim's testimony that she did not like Appellant and had a "bad feeling" about him. Appellant claims the only evidence to corroborate Victim's allegations was from C.C. (Victim's sister) and K.D. (Victim's cousin). Appellant emphasizes that C.C. had to correct Victim about dates and times when Victim disclosed the sexual abuse to hospital staff. Appellant insists Victim's bias against him and C.C.'s "prompting" of Victim during the hospital interview are "troubling." Appellant also contends Nurse Wilkerson did not collect physical evidence from Victim or note any genital injuries. Appellant submits law enforcement similarly made no effort to collect bed linens, clothing, or other items for forensic analysis. Appellant avers C.D. (Victim's

mother and Appellant's sister) testified the interactions between Appellant and Victim were fine, and she did not observe any tension between the two of them. Appellant reiterates his trial testimony that he did not ever have sexual contact with Victim, and was not ever alone with Victim or in a state of undress with her. Appellant maintains the trial court failed to address Appellant's weight issue in its Rule 1925(a) opinion because the court improperly treated the claim as a challenge to the sufficiency of the evidence. Appellant concludes the verdict was so contrary to the evidence that it should have shocked the trial court's sense of justice, and this Court should overturn his convictions.[2] We disagree.

Preliminarily, the distinction between a claim challenging the sufficiency of the evidence and a claim challenging the weight of the evidence is critical. ***Commonwealth v. Widmer***, 560 Pa. 308, 318, 744 A.2d 745, 751 (2000).

> A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.
>
> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the

---

[2] The Commonwealth claims Appellant waived his weight issue by failing to request the transcript from the hearing on Appellant's post-sentence motions. We have obtained and reviewed the relevant transcript, which is now part of the certified record, so we decline to find waiver on this ground.

evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Id.* at 319-20, 744 A.2d at 751-52 (internal citations and quotation marks omitted). *See also Commonwealth v. Wilson*, 825 A.2d 710 (Pa.Super. 2003) (explaining sufficiency of evidence review does not include assessment of credibility, which is more properly characterized as challenge to weight of evidence).

Our standard of review for a challenge to the weight of the evidence is as follows:

The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none

- 6 -

of the evidence presented and determines the credibility of the witnesses. As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. Our appellate courts have repeatedly emphasized that one of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence.

*Commonwealth v. Rabold*, 920 A.2d 857, 860 (Pa.Super. 2007), *aff'd*, 597 Pa. 344, 951 A.2d 329 (2008) (internal citations and quotation marks omitted).

Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004).

Instantly, in his post-sentence motion, Appellant titled the heading for his weight claim as follows: "MOTION FOR ARREST OF JUDGMENT – WEIGHT OF THE EVIDENCE[.]" (Post-Sentence Motion, filed 12/22/17, at 2). In support of this claim, Appellant requested "an arrest of judgment because the jury's verdict was against the weight of the evidence" and stated "that very little, if any, evidence was presented that supports the jury verdict." (*Id.*) Appellant subsequently filed an amended post-sentence motion requesting a "Motion for Judgment of Acquittal" and claiming "the verdict that followed the

presentation of all the evidence should have so shocked this Honorable Court's sense of justice that the only fair conclusion would be for this Honorable Court to arrest judgment and grant [Appellant] a new trial." (Amended Post-Sentence Motion, filed 2/27/18, at 1-2). Appellant alleged, *inter alia*, "the credibility of victim was suspect to the point of undermining the truth determining process." (***Id.*** at 2).

Notwithstanding Appellant's attempt to raise a challenge to the weight of the evidence in his post-sentence motions, Appellant blurred the concepts of a weight claim and a challenge to the sufficiency of the evidence by repeatedly requesting judgment of acquittal, which is the relief for a successful sufficiency claim. ***See Widmer, supra***. Appellant made the same error in his Rule 1925(b) statement and in his argument on appeal. Based on Appellant's request for "Motion for Judgment of Acquittal," the trial court said in its Rule 1925(a) opinion that it interpreted Appellant's claim of error on appeal as a challenge to the sufficiency of the evidence.

Nevertheless, in its analysis of the evidence, the trial court explained:

> [Appellant] also attacks the credibility of [V]ictim, in stating that she was biased against [Appellant], as she stated that she did not like him. Twice during her testimony, once during direct examination and once during cross-examination, [V]ictim stated she hated [Appellant], "more than life itself." It is the jury's function to determine the credibility of witnesses as well as to consider any bias. The jury heard both of these statements and still found [Appellant] guilty. Outside of asking [V]ictim if she did not like [Appellant], [Appellant] failed to further cross-examine [V]ictim as to this statement to show whether she was biased against [Appellant] generally, and not simply

> expressing anger towards him due to the fact that he committed heinous acts against her. [Appellant] argues that the entirety of the Commonwealth's case rested on [V]ictim's credibility. However, the Commonwealth presented the eyewitness testimony of the minor K.D., who credibly testified that she witnessed [Appellant] having sexual intercourse with [V]ictim. This credible corroboration of another independent party as to [V]ictim's allegations provided sufficient factual basis for the jury to find in the Commonwealth's favor on all counts.

(Trial Court Opinion at 6) (internal citations omitted). Notwithstanding the court's purported "sufficiency" review, the trial court's analysis makes clear it evaluated Appellant's attack on the credibility of the witnesses, consistent with a challenge to the weight of the evidence. *See Wilson, supra*.

Further, the court **expressly** and directly addressed Appellant's weight claim during the hearing on Appellant's post-sentence motions, as follows:

> The weight of the evidence. The verdict was not against the weight of the evidence. The jury decides credibility in this case. The [c]ourt doesn't. But it is important for the [c]ourt to observe that [V]ictim's credibility on the witness stand appeared to be very strong.
>
> She was not—when it came to testifying to any of the elements that establish the offense. She did not waiver. She was not uncertain.
>
> The defense points out some excerpts from the transcript. I remember those well and what I remember from these excerpts was a couple things. First of all, I do not recall at this time what the [witnesses] testified to…[regarding] her level of sophistication, but I remember it was below 10 years of age. And the fact that [Victim] had a belief, and even some adults have this belief, that you can somehow will yourself from the inside [not to become pregnant] if you are sexually assaulted, a popular urban legend, which is totally untrue biologically.

But the fact that she believed that and gave herself credit for not becoming pregnant, that's not significant. There [are] a lot of people who are unsophisticated in matters of biology and [Victim] is apparently one of those. Doesn't go to her credibility in the case. It goes to a lack of level of sophistication in sexual matters.

The other three matters all really go to a victim who was traumatized and that was clear from her testimony on the stand. For a person who in terms of maturity and development was so young, she had a sense of rage when she was on the stand that this had occurred to her. And the fact that somebody who had been victimized and traumatized in that matter was fixated on what had occurred to her instead of collateral questions about did [Appellant] cook meals for you. That's frankly not surprising to the [c]ourt. And it doesn't concern the [c]ourt. And frankly, if it was even a person who did not have the IDD issues that [Victim] did, if I had an adult witness testifying in that matter, you know you'd want to re-direct the witness to respond to the question, but it doesn't mean that they are being incredible or what they are saying is not true. It means, they are here in court finally and they are fixated on the trauma that they suffered at the hands of another individual.

[Victim] does speak differently than other individuals because of her impairment. She does tend to sometimes come at issues indirectly and that was clear from her testimony. It may take her a little while to work her way around the mountain to come back to the central point and we saw that in her testimony.

With some individuals that could be viewed as potentially trying to avoid a question. This [c]ourt viewing her testimony believes that is not the case with her. It is just how her brain works that she has to process certain things to come back to that point and I believe we had some testimony in that regard.

So, none of this concerns the [c]ourt in terms of the weight of the evidence and I don't find that it makes her testimony against the weight of the evidence.

One thing that was not brought up, I don't think it was brought up much during closing either that really needs to be remembered on appeal by both parties is there is an eye witness. This is not [Victim] versus [Appellant]. There was an eye witness to the sexual contact[;] her eye witness, again, who was one of the most devastated and credible witnesses this judge has ever seen.

Again, I was [not] sitting [as] the fact finder, but that young person who testified was mortified and could barely get the words out of [her] mouth in the courtroom because [she was] so shocked by what [she] had seen.

So, this isn't a matter of, oh, this is some impaired person or maybe [she] just [had] some fantasy or [she] wanted to get back at [Appellant]. There was an eye witness, who clearly did not want to be in this courtroom saying the words, because [she was] so embarrassed by the fact that [she] had to relate this in a public courtroom.

So, there is corroboration for what [Victim] was saying. And the defense case was not that this was consensual. The defense case was that this never happened and [Appellant] got up here and testified this never happened.

The jury heard from an eye witness, who saw it happen and they apparently deemed that eye witness credible and they apparently deemed [Victim] credible. So, there is more than enough evidence—weight of the evidence to support the verdict. The [c]ourt is certainly not going to replace its judgment for that of the jury.

(N.T. Post-Sentence Motion Hearing, 2/28/18, at 26-30). We see no reason to disrupt the court's analysis. **See Champney, supra**; **Rabold, supra**. Therefore, Appellant's first issue merits no relief.

In his second issue, Appellant argues SAFE Nurse Wilkerson improperly referenced Appellant's prior incarceration during her testimony. Specifically, Appellant highlights Nurse Wilkerson's testimony that Victim stated

Appellant's alleged sexual conduct started about a month after Appellant got out of jail. Appellant asserts defense counsel objected and moved for a mistrial based on the reference to Appellant's prior incarceration. Appellant insists Nurse Wilkerson's comment was unduly prejudicial and could not be remedied by the court's curative instruction. Appellant concludes the court erred by denying his motion for a mistrial, and this Court must remand for a new trial. We disagree.

Our standard of review from the court's denial of a motion for a mistrial is as follows:

> The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

*Commonwealth v. Rega*, 593 Pa. 659, 692, 933 A.2d 997, 1016 (2007), *cert. denied*, 552 U.S. 1316, 128 S.Ct. 1879, 170 L.Ed.2d 755 (2008).

This Court has stated:

> A mistrial is warranted when a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. When the statement at issue relates to a reference to past criminal behavior, the nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required.
>
> A singular, passing reference to prior criminal activity is

usually not sufficient to show that the trial court abused its discretion in denying the defendant's motion for a mistrial. When the trial court provides cautionary instructions to the jury in the event the defense raises a motion for mistrial, the law presumes that the jury will follow the instructions of the court.

*Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa.Super. 2008), *appeal denied*, 600 Pa. 755, 966 A.2d 571 (2009) (internal citations and quotation marks omitted).

Instantly, the trial court addressed this issue as follows:

[Appellant claims] that the [c]ourt abused its discretion in failing to declare a mistrial. [Appellant] points to the statement made by Commonwealth witness Heidi Wilkerson, a SAFE nurse. While testifying, [Nurse] Wilkerson stated that [V]ictim told her that her interactions with [Appellant] began "about a month or so after he got out of jail." At that point [Appellant] moved for a mistrial, which the [c]ourt denied, and instead gave a curative instruction to the jury for them to disregard the testimony regarding jail.

There is not a *per se* rule requiring a new trial for every reference to past criminal conduct, and the decision whether to declare a mistrial when faced with these situations is within the sound discretion of the trial judge. Mere "passing references" to prior criminal activity do not warrant reversal unless the record illustrates that prejudice resulted from the reference. The context of this statement shows it was a mere passing reference made by a medical professional repeating [V]ictim's statement made during a medical exam. The statement did not highlight [Appellant's] prior criminal conduct, it was not within the testimony of a law enforcement officer, [or] a fellow inmate at a correctional institution, but merely a small part of a larger discussion between [V]ictim and a SAFE nurse. The statement was immediately addressed by the [c]ourt through a curative instruction instructing the jury to disregard it completely, and even highlighting that it is not a proven fact. The jury provided no indication that they would refuse to follow the

- 13 -

> judge's instruction, which they had sworn to do. There is no evidence of prejudice in the case from this passing reference. This instruction was sufficient to address the matter and the denial of a mistrial was appropriate.

(Trial Court Opinion at 6-7) (internal citations omitted). The record supports the court's analysis. *See Rega, supra*; *Parker, supra*. Thus, Appellant's second issue merits no relief.

In his third issue, Appellant argues the court imposed consecutive, aggravated range sentences for his rape and IDSI convictions. Appellant asserts the cumulative nature of his sentence demonstrates the court's bias or ill will against Appellant. Appellant concedes the court stated at sentencing that Appellant has no rehabilitative potential, no self-realization, and is dangerous, violent, and manipulative. Appellant insists the sentence imposed was manifestly unreasonable. Appellant suggests the court improperly relied on Appellant's recent release from jail at the time of the current offenses as a basis for sentencing within the aggravated range. As presented, Appellant's claims implicate the discretionary aspects of sentencing. *See Commonwealth v. Corley*, 31 A.3d 293 (Pa.Super. 2011) (explaining allegation that court's sentence was motivated by bias challenges discretionary aspects of sentencing); *Commonwealth v. Hanson*, 856 A.2d 1254 (Pa.Super. 2004) (stating allegation that court imposed excessive, aggravated range sentences implicates discretionary aspects of sentence).

A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. *Commonwealth v. Hunter*,

768 A.2d 1136 (Pa.Super. 2001), *appeal denied*, 568 Pa. 695, 796 A.2d 979

(2001).  Prior to reaching the merits of a discretionary sentencing issue:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal*

*denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

What constitutes a substantial question must be evaluated on a case-

by-case basis.  *Commonwealth v. Paul*, 925 A.2d 825 (Pa.Super. 2007).  A

substantial question exists "only when the appellant advances a colorable

argument that the sentencing judge's actions were either: (1) inconsistent

with a specific provision of the Sentencing Code; or (2) contrary to the

fundamental norms which underlie the sentencing process."  *Commonwealth*

*v. Sierra*, 752 A.2d 910, 913 (Pa.Super. 2000) (internal citation omitted).  In

other words, an appellant's Rule 2119(f) statement must sufficiently articulate

the manner in which the sentence violates either a specific provision of the

sentencing scheme set forth in the Sentencing Code or a particular

fundamental norm underlying the sentencing process.  *Commonwealth v.*

*Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002).

On appeal, this Court will not disturb the judgment of the sentencing

court absent an abuse of discretion. ***Commonwealth v. Fullin***, 892 A.2d

843 (Pa.Super. 2006).

> [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, …: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of the sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court. Thus, rather than cabin the exercise of a sentencing court's discretion, the guidelines merely inform the sentencing decision.
>
> \* \* \*
>
> [W]e reaffirm that the guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors—they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence. …

***Commonwealth v. Walls***, 592 Pa. 557, 564-70, 926 A.2d 957, 961-65

> Furthermore, in exercising its discretion, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence that takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as the court also states of record the factual basis and specific reasons which compelled the deviation from the guidelines. This Court must remand for resentencing with instructions if we find that the sentencing court sentenced outside the guidelines and the sentence was unreasonable.

*Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa.Super. 2001), *appeal denied*, 568 Pa. 695, 796 A.2d 979 (2002) (internal citations omitted). "A sentencing court may consider any legal factor in determining that a sentence in the aggravated range should be imposed." *Commonwealth v. Bowen*, 975 A.2d 1120, 1122 (Pa.Super. 2009). "In addition, the sentencing judge's statement of reasons on the record must reflect this consideration, and the sentencing judge's decision regarding the aggravation of a sentence will not be disturbed absent a manifest abuse of discretion." *Id.*

Pursuant to Section 9721(b), "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "[T]he court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Id. See also*

***Commonwealth v. Fowler***, 893 A.2d 758 (Pa.Super. 2006) (stating where court had benefit of pre-sentence investigation ("PSI") report, we can presume it was aware of relevant information regarding defendant's character and weighed those considerations along with mitigating statutory factors).

Instantly, Appellant timely filed a notice of appeal, and preserved his sentencing claim in a timely filed post-sentence motion and in a Rule 2119(f) statement. ***See Evans, supra***. Additionally, Appellant's claim of bias raises a substantial question. ***See Corley, supra*** (stating allegation of bias in sentencing implicates fundamental norms underlying sentencing and raises substantial question for appellate review). Likewise, Appellant's claim that the court relied on an improper factor (his recent release from jail at the time of the current offenses) to impose an aggravated range sentence presents a substantial question. ***See Commonwealth v. Stewart***, 867 A.2d 589 (Pa.Super. 2005) (stating assertion that court considered improper factors in placing sentence in aggravated range presents substantial question on appeal).

The court explained its sentencing rationale on the record as follows:

> The [c]ourt has reviewed the record and all evidence and testimony in reaching a decision on the sentence in this matter considered in the PSI, statements presented today, as well as the arguments of counsel.
>
> A pre-sentence investigation report was ordered. The [c]ourt has considered those contents, which indicate [Appellant's] prior record score is a 2. Charges before the [c]ourt for sentencing have the following offense gravity scores: Count 1, [a] F1, rape of a mentally disabled victim

- 18 -

is a 12; Count 2, F1, involuntary deviate sexual intercourse, mentally disabled victim, is a 12; Count 3 is [a] F2, sexual assault, which is an 11.

Standard range sentence for Count 1 is 60 to 78 months, aggravated range sentence is 90.

Count 2, standard range is 60 to 78 months, aggravated range sentence is 90. Count 3, standard range sentence is 48 to 60 months, but as we've addressed previously, it merges.

There's a number of factors the [c]ourt needs to consider in this matter. The very nature of the acts of which [Appellant] were found [guilty] are very disturbing and those are contained within the offense gravity score of the matter. So the fact that a mentally disabled person was the victim of a case is not an aggravating factor it's already captured within the offense gravity score.

We had statements from both counsel referencing the way the matter was charged, and that is correct, it was charged as two separate counts, with the two separate counts occurring in a period between Saturday, the 1st of November 2014, and Wednesday, the 8th of April 2015.

At trial, [V]ictim…testified that she had told the SAFE nurse that these assaults on her happened, quote, a lot, unquote, and she testified that it happened on weekends and that it happened more than once, but…the [Commonwealth] charged as it is.

Now we have two separate acts charged here, on Count 1 and Count 2, and the [c]ourt does take into consideration that [Appellant] had the opportunity to consider and reflect on the wrongfulness of his conduct regarding in between each of these separate acts. They are viewed as separate acts under the law, to consider that they were directed at his own niece, and yet he chose to engage in both of these acts of conduct with this young lady.

In this case, [Appellant] clearly engaged in criminal behavior, behavior that shocks the conscience, both because of it being directed at the nature of the victim,

- 19 -

[and] because it was directed at somebody within his own family. He did seek to isolate his victim and he made a mistake, he made an error in picking his victim.

He had only been out of jail about a month, I believe, when he did this, a matter of weeks. And he assumed that [V]ictim would be vulnerable, silent, intimidated, weak, and if she spoke, that she wouldn't be believed. And this is because she has some IDD issues. But [Victim], although not fully understanding why these acts were happening to her, has a fully formed and strongly developed sense of the difference between right and wrong and a strongly developed sense of the differences between truth and lies.

She was not weak in this case, but she was strong. And when she came to understand that she had been mistreated, she was not intimidated, but she was courageous, and she came to court and she spoke her mind in one of the most difficult situations that a young lady could possibly find [herself] in.

She presented herself credibly to the jury and to this [c]ourt, and she was convincing in part because she has a spark and an inner strength to her that [Appellant] did not count on.

I remember during her testimony several times during the trial that she mentioned she's got a phrase that she uses, an expression, where she would say that somebody believed her 33 percent or she told somebody something 33 percent. Now that doesn't mean literally what she said, it became very clear when [Victim] uses that phrase, somebody believed her 33 percent, what she really means, is somebody believed her totally. She's not a math major. We have the records from her counselors who testified as to her academic level. She wasn't believed 33 percent, not by anybody she told, she was believed to be completely truthful and credible.

In its sentencing rule, this [c]ourt accepts the verdict of the [c]ourt, and for purposes of sentencing, finds [Victim's] testimony to have been fully credible.

In addressing [Appellant's] particular needs from this

sentence, we're very concerned that he had only recently left jail and he immediately found somebody to victimize. He found somebody in his own family to victimize. He isolated [her] and assaulted [her]. As we have heard from [Victim's] testimony, he did this repeatedly.

As the [c]ourt noted, he's got a 2013 conviction for aggravated assault. The [c]ourt finds he's got no rehabilitative potential, he can't seem to help himself in terms of lying. He lied on the stand. He lied here today in court again. He's not being sentenced for those lies, *per se*, but it goes to his rehabilitative potential.

He has no self-realization, so no self-reflection on the wrongfulness of his acts. The Commonwealth pointed it out during…closing argument. Again, he's not being sentenced for this, but in the pre-sentence investigation report, he tells the probation officer, there's no evidence to convict me at trial.

Well, I could see him saying that, you know, even in an uneducated non-lawyerly sense, non-legal sense, if it was his word against [Victim's], but there's the testimony of the niece who came in and testified in an absolute shocked and overwhelmed sense, practically, as to what she saw. The young lady was…credible on the witness stand and mortified she had to come in here and talk about the sexual display that she had seen [Appellant] inflicting on [V]ictim.

[Appellant] just pretends like that doesn't exist. He may not agree with it, that's one thing, but saying there's no evidence is just a reflection of his lack of realization of the wrongfulness of his acts, lack of rehabilitative potential.

The [c]ourt finds [Appellant] is a dangerous, violent and manipulative man who seeks to victimize others. He isolated and raped his own niece, sodomized her. The [c]ourt also considers, not for purposes of sentencing in and of itself, but for rehabilitative potential, while pending sentencing on this matter, he's received a write-up for fighting and acts that would endanger another person while in the York County Prison.

He told [V]ictim that he would hurt her if she told anyone,

- 21 -

testimony this [c]ourt finds credible for sentencing purposes. The [c]ourt notes and finds for purposes of sentencing that [Appellant] absconded when he became aware of these charges. That whole story about he's going to help out his sister with her car or something is completely contrived, complete baloney and not convincing in the least. As the Commonwealth pointed out the facts, [Appellant] was aware and he fled.

All of these matters reflect an extreme criminal predisposition, a lack of rehabilitative potential and a violent nature that warrants sentencing in the aggravated range. The [c]ourt is giving consideration to the sentencing guidelines. The [c]ourt takes the sentencing guidelines very seriously, but there are subtleties and subjective factors that are not always captured in the sentencing guidelines.

And in order to protect the other members of this family from [Appellant], from future vicious assault and to protect the public at large from [Appellant], who is extremely dangerous, the [c]ourt will be sentencing in the aggravated range.

[Appellant] needs to remain incarcerated for a prolonged period of time, one that is sufficiently extensive until such time that he no longer presents a threat to society.

Accordingly, after a complete review of all of these matters and the facts and consideration noted above, the [c]ourt hereby sentences [Appellant] as follows: In 333 of 2016, in Count 1, rape of a mentally disabled person, [Appellant] is sentenced to a period of 9 to 18 years in a State Correctional Institution, plus court costs.

Count 2, for the separate and distinct act of involuntary deviate sexual intercourse with a mentally disabled person, a sentence of 9 to 18 years in a State Correctional Institution. That shall run consecutive to Count 1. Court costs are assessed.

Count 3 merges.

(N.T. Sentencing, 12/18/17 at 14-21). We see no reason to disrupt the court's

broad sentencing discretion. *See Walls, supra*; *Fullin, supra*; *Kenner, supra*.

The record confirms the court considered the applicable guidelines at the sentencing hearing but chose to deviate from those guidelines. The court's statements make clear the court gave due consideration to the facts of this case and to Appellant's character and lack of rehabilitative potential, and provided sound reasons for its deviation from the guidelines. *See Kenner, supra*. *See also Walls, supra*. The court had the benefit of a PSI report, so we can presume the court was aware of relevant information regarding Appellant's character and weighed those considerations along with any mitigating factors. *See Fowler, supra*.

Additionally, nothing in the record supports Appellant's bald allegation of bias. Further, the court's consideration of Appellant's recent release from jail at the time of the crimes at issue was proper. *See Bowen, supra* (explaining appellant's lack of significant job history, great emotional trauma appellant's crimes caused victim, as well as his recidivist history and violations of probation were proper factors for court to consider when imposing aggravated range sentence). Under these circumstances, we cannot say the court's imposition of an aggravated range sentence was "unreasonable." *See id.*; *Kenner, supra*. Therefore, Appellant's third issue merits no relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2019