**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Wendell Lamont PARKER, Appellant.**

Superior Court of Pennsylvania.

Submitted March 10, 2008.
Filed Sept. 10, 2008.

James R. Robinson, York, for appellant.

Thomas J. Reilly, Assistant District Attorney, York, for Commonwealth, appellee.

BEFORE: STEVENS, PANELLA and HUDOCK, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Wendell Lamont Parker, appeals from the judgment of sentence entered on August 29, 2007, by the Honorable John S. Kennedy, Court of Common Pleas of York County. After careful review, we affirm.

¶ 2 On January 27, 2007, at about 11:47 p.m., a Springettsbury Township Police Officer pulled Parker over because he noticed that the vehicle had a malfunctioning right brake light. When stopped behind the vehicle, the officer noticed that there was a passenger in the car and that the driver, Parker, "began to reach down, dipping his shoulders right and left." N.T., 7/10/07, at 37–38. This movement caused the officer to believe that the driver might have been concealing a weapon. *Id.* As the officer would eventually find out, Parker gave the officer a false name, social security number, and birthdate.

¶ 3 After Parker was unable to produce identification, the officer ordered him out of the car so he could pat him down to check for the presence of weapons. During the pat down, the officer felt two plastic bags with a "hard chunky substance" in Parker's pants pocket. *Id.* at 38. Based on the officer's experience, he believed the objects felt to be cocaine and seized them. During the search incident to arrest, the officer also found a smoking device used to smoke crack cocaine.

¶ 4 While the smoking device did test positive for crack cocaine residue, the hard

chunky substance also seized was actually candle wax. After the officer advised him of his rights, Parker stated, "Man, that ain't real coke, it's candle wax ... I ain't going to lie, I was going to sell it if the opportunity presented itself. I got a really bad habit." *Id.* at 44. Parker was charged with various crimes arising from this incident.

¶ 5 At the hearing on July 10, 2007, the trial court denied Parker's motion for suppression of the evidence obtained during the pat down. The matter proceeded to trial on the same date. The arresting officer testified that he determined Parker's true identity from another jurisdiction "who had contact with him at one time." *Id.* at 45. Due to this remark, defense counsel requested a mistrial. The trial court denied this request, but provided the jury with a cautionary instruction that they cannot imply prior criminal conduct from the officer's statement. *Id.* at 47. The jury convicted Parker of criminal attempt to deliver a noncontrolled or counterfeit substance,[1] possession of drug paraphernalia,[2] and false identification to law enforcement.[3] On August 29, 2007, the trial court sentenced Parker to an aggregate sentence of 2½ to 5 years incarceration, consecutive to a state parole violation. This timely appeal followed.

¶ 6 On appeal, Parker raises the following issues for our review:

1. Whether the trial court erred in denying the defendant's Motion to Suppress when the evidence used against him was seized following an unlawful detention and an unlawful pat-down search of his person that was not supported by probable cause or reasonable suspicion of on-going criminal activity nor that the defendant was armed and dangerous, and the search exceeded its permissible scope[?]

2. Whether the evidence was sufficient to support the jury's verdict finding the defendant guilty of Criminal Attempt to Deliver a Noncontrolled Substance?

3. Whether the trial court erred in denying the defendant's Motion for Mistrial after the police officer implied to the jury that the defendant had been involved in prior criminal activity?

Appellant's Brief, at 3.

¶ 7 In his first issue on appeal, Parker claims that the evidence seized during his traffic stop should have been suppressed by the trial court. He argues that the police officer unlawfully detained him without reasonable suspicion, unlawfully searched him without the proper suspicion that he was armed and dangerous, and unlawfully seized items in violation of the plain feel doctrine.

¶ 8 Our standard of review for suppression matters is well established:

[W]e must determine whether the factual findings [of the suppression court] are supported by the record and, assuming there is support in the record, we are bound by the facts and may reverse if the legal conclusions drawn from those facts are in error.

*Commonwealth v. Pakacki*, 587 Pa. 511, 516–517, 901 A.2d 983, 986 (2006) (quotation omitted).

¶ 9 When a police officer lawfully stops a motorist for a violation of the Pennsylvania Motor Vehicle Code, the offi-

---

1. 18 PA. CONS.STAT. ANN. § 901(a); 35 PA. STAT. § 780–113(a)(35)(ii).

2. 35 PA. STAT. § 780–113(a)(32).

3. 18 PA. CONS.STAT. ANN. § 4914.

cer is permitted to ask the driver to step out of the vehicle "as a matter of right." *Commonwealth v. Wilson,* 927 A.2d 279, 284, (Pa.Super.2007), citing, *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). During this investigatory stop, the officer can pat-down the driver "when the officer believes, based on specific and articulable facts, that the individual is armed and dangerous." *Commonwealth v. Stevenson,* 894 A.2d 759, 772 (Pa.Super.2006), *appeal denied,* 591 Pa. 691, 917 A.2d 846 (2007), citing, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969); *Commonwealth v. Robinson,* 410 Pa.Super. 614, 600 A.2d 957, 959 (1991), *appeal denied,* 533 Pa. 599, 617 A.2d 1273 (1992). Such pat-downs, which are permissible "without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly limited to that which is necessary for the discovery of weapons" that might present a danger to the officer or those nearby. *Commonwealth v. Ingram,* 814 A.2d 264, 269 (Pa.Super.2002) (quotation omitted), *appeal denied,* 573 Pa. 671, 821 A.2d 586 (2003). When assessing the validity of a pat-down, "we examine the totality of the circumstances ... giving due consideration to the reasonable inferences that the officer can draw from the facts in light of his experience, *while disregarding any unparticularized suspicion or hunch." Wilson,* 927 A.2d at 284 (citation omitted).

¶ 10 If it becomes clear to the police officer during the pat-down that the suspect does not have any weapons on his person, the plain feel doctrine exists as an exception to allow for the seizure of "non-threatening contraband" when the officer feels an object "whose mass or contour makes its criminal character immediately apparent." *Id.* at 287 (quotation omitted);

*Pakacki,* 587 Pa. at 521, 901 A.2d at 989 (citation omitted). The contraband is "immediately apparent" when "the officer readily perceives, without further exploration or searching, that what he is feeling is contraband." *Id.* The object cannot be seized if, "after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search." *Id.*

¶ 11 The police officer lawfully pulled Parker over because of a malfunctioning brake light; therefore he also had the right to ask him to step out of the vehicle. Guidance is provided in the *Mimms* case, where the defendant, who was driving with expired license tags, was lawfully stopped and asked to exit the vehicle because he was also in violation of the Pennsylvania Motor Vehicle Code. The lawfulness of the investigatory stop in both *Mimms* and this case dispels any "question about the propriety of the initial restrictions on respondent's freedom of movement." *Mimms,* 434 U.S. at 109, 98 S.Ct. 330. Therefore, the officer lawfully detained Parker and requested that he step out of the car.

¶ 12 During the suppression hearing, the officer provided specific facts explaining why he had reason to believe Parker was armed and dangerous, which he observed immediately after he stopped and pulled behind him. The officer explained his reasons for patting down Parker as follows:

Q: What was your original reason for patting him down?

A: The furtive movements I observed upon stopping him, reaching down to his right and to his left.

Q: Why would you pat him down because of those movements?

A: Based on his movements, my safety in my opinion was in jeopardy, because I didn't know if he was trying to get a weapon or not. I wanted to be sure he

did not possess a weapon, so we were both safe on the traffic stop. N.T., 7/10/07, at 7. At the suppression hearing, the officer also described Parker's movements as "shoulders dipping from side to side as if he was trying to retrieve something." *Id.* at 12.

¶ 13 On very similar facts, we have previously found that an officer articulated sufficient facts to constitute reasonable suspicion for a pat-down. In *Wilson,* immediately after the officer stopped and pulled behind the defendant, he observed him "looking into his rear view and side mirrors and his "shoulders and stuff" were moving around." 927 A.2d at 284. The defendant's "suspicious gestures and movements, in conjunction with the fact that he placed his hands inside his coat pocket as if he were reaching for something, could lead Officer Gunter to reasonably conclude that his safety was in jeopardy." *Id.* at 284–285. *See also Commonwealth v. Mack,* 953 A.2d 587 (Pa.Super.2008) (the officer could have reasonably concluded that his safety was in jeopardy and so was justified in subjecting the defendant to a *Terry* frisk based on the defendant's "reaching movements in the vehicle while the officer approached," coupled with the time of day, the defendant's nervousness, and his lack of proper identification); *Commonwealth v. Murray,* 936 A.2d 76, 77 (Pa.Super.2007) (the officer articulated sufficient facts to lead him to conclude the defendant could have been armed and dangerous due to his "excessive movement inside the vehicle," in addition to the hour of night and the fact that the neighborhood was a well-known narcotics area).

¶ 14 Examining the totality of the circumstances, the suspicious gestures and movements of Parker could have caused the officer to reasonably conclude, in light of his experience, that Parker was armed

and dangerous. We "must be guided by common sense concerns that *give preference to the safety of the police officer* during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon." *Stevenson,* 894 A.2d at 772 (citation omitted). Accordingly, the police officer did not unlawfully search Parker.

■ ¶ 15 During the pat-down, after it became apparent to the officer that Parker did not have any weapons on him, the officer lawfully seized the objects from Parker under the plain feel doctrine. At the suppression hearing, the police officer explained:

> As I patted him down, I felt two plastic bags in his cargo pocket with some hard rigid objects, that based on my training and experience, I believed became apparent to me these objects were consistent with the size, shape, and texture of packaged crack cocaine.

N.T., 7/10/07, at 6–7. Unlike *Commonwealth v. Stackfield,* 438 Pa.Super. 88, 651 A.2d 558 (1994), which Parker relies on, the officer here was able to immediately identify the object he felt as packaged crack cocaine before he reached into Parker's pocket and looked at the plastic bags. In *Stackfield,* "it was only after the officer reached in and seized the baggies from appellant's pockets that the contents in two of the baggies were identified, by sight, as a green, leafy material that subsequently field-tested positive for marijuana." *Id.* at 562. Similarly, in *Wilson,* the police officer could not identify the object he felt on the defendant during the pat-down. The police officer only discovered it was crack cocaine after he saw it in the defendant's pocket. The officer admitted that he "thought it was a weapon of some sort" when he looked in the defendant's pocket, and so its criminal character was not immediately apparent. *Wilson,* 927

A.2d at 285. Accordingly, the officer's actions in this case did not go beyond the scope of the plain feel doctrine because he stated that he knew Parker had contraband in his pocket from conducting the pat-down alone.

¶ 16 In his second issue on appeal, Parker claims that the evidence was insufficient to sustain a conviction for criminal attempt to deliver a noncontrolled substance because there was no evidence that Parker took a substantial step toward the commission of this crime.

¶ 17 The standard of review for sufficiency of the evidence is as follows:

> this Court must determine whether the evidence, and all reasonable inferences deducible therefrom, when viewed in a light most favorable to the Commonwealth, are sufficient to establish all the elements of the crime beyond a reasonable doubt.

*Commonwealth v. Riley,* 434 Pa.Super. 414, 643 A.2d 1090, 1091 (1994) (citation omitted).

¶ 18 In order to commit an attempt, a person must, "with intent to commit a specific crime," do "any act which constitutes a substantial step toward the commission of that crime." 18 Pa. Cons.Stat. Ann. § 901(a). The crime of delivery of a noncontrolled substance is defined as:

> (ii) Except as otherwise provided by law, no person shall knowingly distribute or sell a noncontrolled substance upon the express or implied representation that the substance is a controlled substance. In determining whether there has been a violation of this subclause, the following factors shall be considered:
>
> (A) Whether the noncontrolled substance in its overall finished dosage appearance is substantially similar in size, shape, color and markings or lack thereof to a specific controlled substance.

> (B) Whether the noncontrolled substance in its finished dosage form is packaged in a container which, or the labeling of which, bears markings or printed material substantially similar to that accompanying or containing a specific controlled substance.
>
> (C) Whether the noncontrolled substance is packaged in a manner ordinarily used for the illegal delivery of a controlled substance.
>
> (D) Whether the consideration tendered in exchange for the noncontrolled substance substantially exceeds the reasonable value of the substance, considering the actual chemical composition of the substance and, where applicable, the price at which over-the-counter substances of like chemical composition sell.
>
> (E) Whether the consideration tendered in exchange for the noncontrolled substance approximates or exceeds the price at which the substance would sell upon illegal delivery were it actually the specific controlled substance it physically resembles.

35 Pa. Stat. § 780–113(a)(35)(ii).

¶ 19 The evidence was sufficient to establish the elements of attempted delivery of a noncontrolled substance. From Parker's own statements, he explained to the officer that the substance found by the officer was not cocaine but was candle wax, and that he "was going to sell it if the opportunity presented itself." N.T., 7/10/07, at 44. The officer testified at trial that the size, shape, color, and packaging of the substance was consistent with that of crack cocaine. *Id.* at 44–45. Upon feeling the substance during the pat-down, the officer explained: "At that point it became immediately apparent to me, based on my experience, these objects were of a size and shape consistent with the texture of packaged cocaine that I had been involved with before in my job." *Id.* at 38–

39. In fact, the officer continued to believe the substance he seized was crack cocaine, even after he retrieved it from Parker's pocket, until Parker himself admitted that it was not cocaine but rather was candle wax. *Id.* at 39, 44. Viewing the evidence in the light most favorable to the Commonwealth, Parker also admitted that he knew the substance looked like cocaine, as evidenced by his otherwise anomalous statement that the substance was not "real coke." *Id.* at 44. He likewise admitted that he planned to knowingly sell this substance as cocaine "if the opportunity presented itself" to support his drug addiction. *Id.*

¶ 20 The actions that Parker undertook to prepare to sell the substance as cocaine constitute a substantial step toward the commission of delivery of a noncontrolled substance. He was carrying the cocaine-like substance with him, packaged in plastic baggies "consistent with the way drug dealers handle or package crack cocaine," and he admitted that he would sell it "if the opportunity presented itself." *Id.* at 44–45. In *Commonwealth v. Irby,* 700 A.2d 463 (Pa.Super.1997), we found that a defendant who packaged candle wax in plastic baggies as cocaine and tried to sell it to an undercover officer, even though the sale never actually occurred, was sufficient to constitute delivery of a noncontrolled substance. Here, Parker took similar substantial steps toward the commission of the same crime, except that he was waiting for the opportunity of a possible buyer to present itself. Therefore, the evidence was sufficient to convict Parker of attempted delivery of a noncontrolled substance.

¶ 21 In his third issue on appeal, Parker argues that the trial court should not have denied his motion for a mistrial after the police officer made a statement that implied Parker was involved in prior criminal activity.

¶ 22 Due to the fact that Parker provided the officer with a fake name and identifying information, the officer had to consult another jurisdiction in order to accurately identify him. The police officer made the following statements during trial:

A: When we got back to my station, did some research, and after a short amount of time, was able to determine who he actually was through J-net photos, which is the database that contains all the driver's license photos, and with some assistance from a neighboring jurisdiction detective, I was able to identify him.

Q: And is that when you discovered that the birth date he gave you was an incorrect date, as well as the social security number that he gave?

A: Yes, because I obtained the correct information from another jurisdiction who had contact with him at one time, and then they—

N.T., 7/10/07, at 45. After defense counsel's objection and request for a mistrial, the trial court decided to deny the request but to issue a cautionary instruction to the jury. The instruction was as follows:

Ladies and gentlemen, the officer's answer to the last question, he indicated that he apparently didn't have the correct date of birth of the Defendant, and he indicated he had—he got that information from another jurisdiction who had contact with the Defendant.

A concern is that you might infer from that, that the Defendant had some sort of prior criminal conduct because he had contact with a jurisdiction, and what's important is that in this case, you base your decision solely on what happened on January 27th of '07, and not consider

anything that may have happened prior to that time.

There are many reasons for individuals to have contact with police departments. You know, I've called the police a couple times myself in the past couple of months because of suspicious activity in my neighborhood, and I'm sure some of you may have had contact with police officers maybe by virtue of a traffic stop or any other types of situations like that.

But nonetheless, the main thrust of this issue is that you make certain that when you decide this case, you decide this case based solely on what occurred on January 27th, '07, and I'm going to ask you to completely disregard the officer's comment about how he was aware that there had been contact by the Defendant with another jurisdiction. That shouldn't enter into your deliberations at all and should not influence you one way or the other in the decision in this case. I'm going to ask you to totally disregard that remark and strike it from your minds.

*Id.* at 47–48.

¶ 23 The standard of review for determining whether the trial court erred in denying a motion for a mistrial is as follows:

The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

*Commonwealth v. Rega,* 593 Pa. 659, 692, 933 A.2d 997, 1016 (2007) (quotation omitted), *cert. denied,* —— U.S. ——, 128 S.Ct. 1879, 170 L.Ed.2d 755, 76 USLW 3555 (2008).

¶ 24 "A mistrial is warranted when a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." *Commonwealth v. Zabala,* 303 Pa.Super. 72, 449 A.2d 583, 586 (1982). When the statement at issue relates to a reference to past criminal behavior, "[t]he nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required." *Commonwealth v. Kerrigan,* 920 A.2d 190, 199 (Pa.Super.2007), *appeal denied,* 594 Pa. 676, 932 A.2d 1286 (2007). A singular, passing reference to prior criminal activity is usually not sufficient to show that the trial court abused its discretion in denying the defendant's motion for a mistrial. *Id.; Commonwealth v. Allen,* 448 Pa. 177, 181, 292 A.2d 373, 375 (1972). When the trial court provides cautionary instructions to the jury in the event the defense raises a motion for mistrial, "[t]he law presumes that the jury will follow the instructions of the court." *Commonwealth v. Brown,* 567 Pa. 272, 289, 786 A.2d 961, 971 (2001) (citation omitted), *cert. denied,* 537 U.S. 1187, 123 S.Ct. 1351, 154 L.Ed.2d 1018 (2003).

¶ 25 Despite the remarks of the police officer regarding the "contact" between Parker and police officers in another jurisdiction, the cautionary instruction given by the trial court to the jury prevented this testimony from warranting a mistrial. In *Zabala,* the arresting detective testified that "he knew the defendant and knew where the defendant lived." 449 A.2d at 586. The trial court denied the defendant's motion for a mistrial, and we af-

firmed. Another reasonable inference the jury could have made, besides an inference of prior criminal activity, was that the detective knew this information because he had in fact made the arrest of the defendant. *Id.* Similarly, in *Allen,* the Supreme Court found that there was prejudicial error because the statements from five witnesses regarding police photographs of the defendant left "no reasonable explanation as to how the police obtained defendant's photographs other than through his prior criminal conduct." 448 Pa. at 183, 292 A.2d at 376. Here, however, the trial court not only provided a thorough cautionary instruction, but also proposed other reasonable non-criminal scenarios that could have explained why Parker had had prior "contact" with another jurisdiction.

¶ 26 Additionally, the statement made by the police officer regarding Parker's "contact" with a different jurisdiction was a mere passing remark that does not appear from the record to have been intentionally elicited by the Commonwealth. The officer's comments merely provided a context to explain how he eventually came to identify Parker, which flowed from the charge against him of false identification to law enforcement. In *Kerrigan,* we also found that the witness' statements regarding the defendant's prior prison stay were not intentionally elicited by the Commonwealth and were merely made in passing. The witness offered the information on her own and did not state when the defendant was incarcerated, the nature of his stay in prison, nor the charges for which he was convicted. *Kerrigan,* 920 A.2d at 200. "At most, the jury in this case could have inferred that Kerrigan was incarcerated at some point in his past for an unknown crime," which would not have required the trial court to grant a mistrial. *Id. See also Commonwealth v. Guilford,* 861 A.2d 365, 370–71 (Pa.Super.2004) ("finding no trial court error in denying a mistrial where

there were two passing references to the defendant's prior convictions"), citing, *Kerrigan,* 920 A.2d at 200. Here, the statements made by the police officer were even less explicit because he merely mentioned that Parker had prior "contact" with another jurisdiction. As such, the officer's statements did not warrant a mistrial.

¶ 27 For the foregoing reasons, we find that the trial court committed no reversible errors.

¶ 28 Judgment of sentence affirmed. Jurisdiction relinquished.