J-S08008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SEAN LEWIS QUARLES | : | |
| | : | |
| Appellant | : | No. 1204 MDA 2021 |

Appeal from the Judgment of Sentence Entered July 9, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0004924-2019

BEFORE:  BOWES, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY BOWES, J.:                    **FILED:  MARCH 22, 2022**

Sean Lewis Quarles appeals from the judgment of sentence of seven to fourteen years of incarceration, which was imposed after a jury convicted him of several drug-related offenses, including one count of possession with intent to deliver ("PWID") heroin and fentanyl and two counts of PWID cocaine.  We affirm.

On the morning of August 23, 2019, Appellant drove two individuals, James Patterson ("Patterson") and Danny Seng ("Seng"), in a silver Infiniti to the R&M Variety Shop in Harrisburg.  While inside the store, video surveillance captured the three men standing at the counter.  Ultimately, Patterson purchased a digital scale, mortar and pestle, Pyrex measuring cup, and straining utensil, all of which were consistent with the manufacturing of crack cocaine.  The three men then left in the silver Infiniti.

At approximately 7:30 p.m., Patrol Officer Andrew Cortelazzi observed a silver Infiniti with the license plate "LCR 2079" in an area of the city known for drug-trafficking. The Infiniti had illegal tint on the rear windows and an inoperable center brake light. The officer followed the vehicle until it began to park. At that time, the officer activated his emergency lights to initiate a traffic stop, but the Infiniti drove away at a high rate of speed. As Officer Cortelazzi pursued the vehicle, he observed a blue bag being thrown from the passenger's side of the Infiniti. Officer Cortelazzi notified other officers to be on the lookout for the vehicle. In the meantime, he stopped his pursuit to investigate the discarded bag. Inside the bag, he recovered what was later tested and confirmed as a waxy paper packet containing 12.32 grams of heroin and fentanyl, a knotted plastic bag corner containing one MDA tablet, one white glassine bag marked with a snake head image and "420 VENOM" with cocaine residue, five pink glassine bags containing a total of 0.85 grams of heroin and fentanyl, one partial pink glassine bag containing residue, one white glassine bag marked with a snake head image and "420 VENOM" with residue, one knotted plastic bag containing 12.3 grams of cocaine base, 0.06 grams of marijuana, $106.01 in cash, a piece of paper, numerous rubber bands, grains of rice, a metal razor blade, a pencil, a plastic toy, metal scissors, four empty plastic bags, a firearm holster, a straw with residue, and a digital scale.

Later that evening, Patrol Officer Brian Carriere received an advisory report of an abandoned vehicle on Bombaugh Street in Harrisburg. Officer

Carriere responded to the area and found the silver Infiniti with license plate "LCR 2079" parked in the middle of the street. Edwin Aleman, Sr. ("Mr. Aleman"), who owns a garage in the area, had earlier observed the Infiniti stop in the middle of the road because another vehicle was obstructing traffic. The driver and front seat passenger emerged from the vehicle and ran through an alleyway. Officers reviewed footage from a video camera on a nearby chicken coop and identified the two men as Appellant and Seng. At trial, Mr. Aleman viewed the same video and identified the two men in the video as the same men who parked the Infiniti near his garage and ran through the alley.

The Infiniti was towed and on August 26, 2019, a search warrant was executed. The search revealed, *inter alia*, a cell phone and a receipt from the R&M Variety Shop. The vehicle and some of the items were dusted for finger and palm prints. Patterson was the source for the print lifted from the cell phone; Patterson, Seng, and Appellant were sources for some of the nineteen prints lifted from inside the vehicle.

Police determined that the Infiniti was registered to Sophia Gascot ("Ms. Gascot"), whom they interviewed on August 26, 2019. Ms. Gascot informed police that she met Appellant in May 2019. A few months later, Appellant asked to transfer title in his Infiniti to her for a brief period. Ms. Gascot agreed and the two completed the transfer on July 23, 2019. At the time of the interview, Ms. Gascot told police that Appellant had told her that the Infiniti had been stolen from him a couple days earlier. At trial, however, Ms. Gascot claimed that she was sick at the time of the interview and did not remember

telling police that Appellant had notified her that the Infiniti had been stolen from him. A subsequent search of Ms. Gascot's phone revealed that Appellant called her seven times between 7:30 p.m. and 8:09 p.m. on the night of the incident, and they spoke on the phone for over eight minutes the following day. Ms. Gascot testified she did not remember those calls because she was sick at the time.

On September 10, 2019, police executed search warrants at Appellant's residences on State Street and Hummel Street, as well as Seng's residence on Regina Street, all of which were in Harrisburg. Of relevance to this appeal, police recovered Appellant's mail and a digital scale at the State Street residence. At the Hummel Street residence, the Special Emergency Response Team ("SERT") of the Pennsylvania State Police secured the residence prior to execution of the search warrant. As SERT announced its presence outside the residence, a SERT drone operator recorded a thermal image of an arm throwing an object onto the roof of the residence from an open window. As the first responding SERT member reached the third floor, he encountered Appellant re-entering the third floor of the residence through an open window. Upon inspection, the SERT member observed a firearm on the rooftop outside the window.

Critically, Appellant was the only individual on the third floor, which appeared to be a separate living space within the rooming house as it had its own key. Ultimately, the police recovered, *inter alia*, the firearm from the rooftop, as well as mannitol, a cutting agent, and 1.54 grams of crack cocaine

from the third floor.  Appellant was arrested.  Based on the search and the August 23, 2019 incident, Appellant was charged with one count each of PWID heroin and fentanyl, conspiracy, recklessly endangering another person ("REAP"), and persons not to possess firearms, as well as two counts each of PWID cocaine and tampering with evidence.

On May 17, 2021, Appellant proceeded to a four-day joint jury trial with co-defendant Seng.  The Commonwealth agreed to bifurcate the persons not to possess firearms charge so the jury would not hear evidence of the prior conviction that rendered Appellant ineligible to possess a firearm.  Instead, the verdict sheet contained an interrogatory as to whether Appellant possessed the firearm recovered during the September 10, 2019 search.  If the jury answered yes, the trial court would then enter a finding of guilt as to persons not to possess firearms.

At trial, Seng testified and implicated Appellant, whom he identified as the driver of the Infiniti when the bag was discarded.  According to Seng, the bag belonged to Appellant, Seng was unaware of its existence or contents, and it was Appellant who retrieved the bag from underneath his leg and threw it out the passenger window during the chase.  Appellant chose not to testify.

At the conclusion of the trial, the jury convicted Appellant of all charges.[1] Since the jury found that Appellant was in possession of the firearm, the trial court also convicted him of persons not to possess firearms.  On July 9, 2021,

_____

[1] Seng was also convicted as charged.  He has separately appealed his judgment of sentence to this Court at 1180 MDA 2021.

the trial court sentenced Appellant to the following concurrent terms of incarceration: seven to fourteen years for PWID heroin and fentanyl, two and one-half to five years for each count of PWID cocaine, six to twelve years for conspiracy, one to two years for REAP, nine months to two years for each count of tampering with evidence, and seven to fourteen years for persons not to possess firearms. Appellant filed a post-sentence motion, which the trial court denied.

This timely filed appeal followed.[2] Both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant presents the following issue for our review: "Whether the trial court erred in denying the motion for mistrial when Commonwealth's witness referred to Appellant having been previously incarcerated, violating the pretrial ruling preventing such statements?" Appellant's brief at 6 (unnecessary capitalization omitted).

We consider this issue mindful of our standard of review:

> A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

_____

[2] Since the thirtieth day following the court's denial of Appellant's post-sentence motion was a Saturday, his notice of appeal was due the next business day, Monday, September 13, 2021. **See** 1 Pa.C.S. § 1908 ("Whenever the last day of any [period of time referred to in a statute] shall fall on Saturday or Sunday, . . . such day shall be omitted from the computation.").

***Commonwealth v. Bennett***, 225 A.3d 883, 890 (Pa.Super. 2019) (cleaned

up).

> A mistrial is warranted when a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. When the statement at issue relates to a reference to past criminal behavior, the nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required. A singular [*sic*], passing reference to prior criminal activity is usually not sufficient to show that the trial court abused its discretion in denying the defendant's motion for a mistrial.

***Commonwealth v. Parker***, 957 A.2d 311, 319 (Pa.Super. 2008) (cleaned

up).

Appellant challenges the trial court's denial of two different mistrial

motions during Ms. Gascot's testimony.[3] We begin with the first, which

concerns testimony about Appellant's prior incarceration. Specifically, the

following exchange occurred during her direct examination by the

Commonwealth:

Q: Did [Appellant] pay you to have this vehicle in your name?

A: No.

---

[3] We observe that Appellant only referenced the first mistrial motion in his statement of questions. However, as the second contested mistrial ruling occurred during the same witness's testimony and was preserved in Appellant's Rule 1925(b) statement, we conclude that the argument concerning the second mistrial motion was fairly suggested by the statement of questions and decline to find waiver. ***See*** Pa.R.A.P. 2216 ("The statement will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

Q:     He didn't pay you anything?

A:     Nope.

Q:     You just did this out of the kindness of your heart?

A:     Well, I thought I was helping.

Q:     Why would you do that for him?

A:     Because he was saying that he just had got out of prison, he just got a construction job and he wanted to - -

N.T., 5/17/21-5/20/21, at 135-36. At that point, Appellant's counsel objected and the court held a sidebar conference during which Appellant moved for a mistrial. Finding that nothing in the question caused the answer and that Ms. Gascot had instead spontaneously volunteered that Appellant had been in prison, the court denied the motion. In doing so, the court also noted that it was unclear whether the jury even heard the statement. According to the court, the proper remedy would be to either ignore it or give a cautionary instruction. *Id*. at 136-37. When the Commonwealth offered to direct Ms. Gascot to avoid saying anything else regarding his prior incarceration, Appellant's counsel responded, "please." *Id*. at 137. Thus, Appellant's counsel chose to ignore the statement in lieu of a curative instruction.

In its Rule 1925(a) opinion, the trial court elaborated on its rationale as follows:

Appellant's prior incarceration was referenced merely in passing in response to a question that had nothing to do with Appellant's prior criminal record, and other than this one inference, there was no further testimony regarding his incarceration throughout the four-day trial in this matter. Moreover, there was no detailed

- 8 -

testimony as to the specifics of Appellant's prior incarceration or the criminal activity that may have led to his incarceration. Taking all this context into consideration, we cannot find that the mention of his recent release from incarceration was so prejudicial to Appellant as to justify the extraordinary remedy of a mistrial.

Trial Court Opinion, 11/10/21, at 14.

Appellant argues "[t]here was no reason for the prosecution to ask what Ms. Gascot's reasoning was behind wanting to help Appellant out with a vehicle. The question which elicited the prejudicial answer was irrelevant to the charges and Ms. Gascot's overall testimony." Appellant's brief at 17. Appellant also challenges the court's conclusion that the statement was brief, instead contending that he was prejudiced by the testimony. *Id*. at 18-19.

At trial, Ms. Gascot described Appellant as an associate whom she permitted to transfer title in a vehicle to her after knowing him for a few months. As part of that transaction, she also agreed to pay for insurance on the vehicle. Appellant asked her to do this on a temporary basis because he did not currently have his license, so they planned to re-transfer title to him when he got his license back at the end of the month. Although she claimed that, to her knowledge, Appellant did not drive the vehicle while she held title, she also stated that she agreed to the transfer as a way to help him because he stated that he needed to transfer title to her so he could drive to work and see his children. Additionally, despite Ms. Gascot's acknowledgement that she did not drive the Infiniti, she paid for the vehicle to be returned after it was seized by the police. Finally, at trial, Ms. Gascot backtracked from her earlier

statement to police that Appellant had notified her that someone had stolen the Infiniti from him around the time of the incident. Instead, she stated that she did not remember telling police that and she did not know anything about Appellant driving the Infiniti until the police interviewed her.

Based on these blatant incongruities and her claimed memory lapse, the Commonwealth attempted to probe further into why she agreed to the title transfer and whether she did so with the knowledge that Appellant would still be driving the vehicle. In doing so, the Commonwealth queried whether Appellant paid her to transfer the title and, if not, why she would agree to it. This questioning was relevant to her credibility and to Appellant's state of mind if he sought to continue to use the Infiniti but distance himself from the ownership of the vehicle. In other words, he may have wanted to conduct illegal business with the vehicle and not have it traced to him. Thus, we find that the questions that led to the objected-to answer were relevant.

Moreover, our review of the certified record reveals that the questions were not intended to elicit a response about Appellant's prior incarceration and Ms. Gascot's unprompted mention of Appellant's prior incarceration was fleeting. Since the testimony was not intentionally elicited by the Commonwealth and the reference was brief, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for a mistrial. **See Commonwealth v. Kerrigan**, 920 A.2d 190, 200 (Pa.Super. 2007) (noting the Commonwealth did not intentionally elicit information as to Kerrigan's

incarceration, and based on the testimony, "[a]t most, the jury in this case could have inferred that Kerrigan was incarcerated at some point in his past for an unknown crime. This singular, passing reference to a prior conviction is simply not sufficient to show that the trial court abused its discretion in denying Kerrigan's motion for a mistrial.").

We now turn to the second portion of Appellant's argument, which concerns testimony that Appellant sold marijuana. Specifically, the following exchange occurred between Ms. Gascot and Seng's attorney during cross-examination:

> Q:     Okay. Now, on direct you testified that you met [Appellant] through a mutual friend. Who was that mutual friend?
>
> A:     Patty.
>
> Q:     Okay. And under what circumstances that you were introduced to [Appellant]?
>
> A:     He came to our house.
>
> Q:     You guys didn't have any business relationship?
>
> A:     No. When you say business, what do you mean?
>
> Q:     Purchasing drugs, selling narcotics, anything like that.
>
> A:     I've seen him selling weed to her.

N.T., 5/17/21-5/20/21, at 139. At that point, Appellant's counsel objected. A sidebar conference was held during which Appellant moved for a mistrial based on counsel asking Ms. Gascot directly about prior bad acts. The trial court denied the motion without elaboration. *Id*. at 140. When asked if

- 11 -

counsel had any other requests, Appellant's counsel answered negatively and co-defendant's counsel continued without further referencing the drug sales. *Id*.

Notably, the trial court did not address this motion in its Rule 1925(a) opinion despite Appellant including it within his concise statement. *See* Rule 1925(b) Statement, 10/13/21, at unnumbered 2 ("The trial court erred in denying the motion for mistrial when Commonwealth's witness referred to Appellant having been previously incarcerated, violating the pretrial ruling preventing such statements, and her alluding to [Appellant's] supposedly illegal 'business transactions[.]'"). The Commonwealth similarly neglects to address the denial of this motion for a mistrial in its brief to this Court, despite Appellant raising it in the argument section of his brief.

Appellant argues that this line of questioning was irrelevant and in violation of Pennsylvania Rule of Evidence 404(b). Appellant's brief at 18. This rule provides as follows:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.
>
> (2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.
>
> (3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.E. 404(b). Appellant claims Ms. Gascot's answer was prejudicial because it informed the jury "that Appellant . . . was known to sell illegal substances, for which Appellant was currently on trial." Appellant's brief at 13.

This line of questioning by co-defendant's counsel was, in part, related to Ms. Gascot's description of Appellant on direct examination as an "associate." Thus, it was responsive to the direct examination and relevant to her relationship with Appellant. However, it is undeniable that counsel specifically sought to elicit testimony that Appellant participated in illegal drug trafficking, thereby implying that it was likely that it was Appellant who possessed the drugs discarded from the Infiniti as opposed to Seng. While this intentional elicitation of prior bad acts was prejudicial, "its unavoidable effect [was not] to deprive the appellant of a fair and impartial trial." **Bennett**, **supra**. In context, the reference to Appellant "selling weed" was brief, and Appellant was not on trial for PWID marijuana. Given that it was a single, passing reference to prior criminal activity, we do not find that the trial court abused its discretion in denying Appellant's motion for a mistrial. **See Parker**, **supra** at 319 ("A singular [*sic*], passing reference to prior criminal activity is usually not sufficient to show that the trial court abused its discretion in denying the defendant's motion for a mistrial").

Based on the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/22/2022