J-S37026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                       :         PENNSYLVANIA
                                       :
             v.                         :
                                       :
                                       :
MARKEE DAVIS                      :
                                       :
            Appellant        :     No. 1912 EDA 2021

Appeal from the Judgment of Sentence Entered August 13, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008741-2019

BEFORE:  BOWES, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY LAZARUS, J.:               **FILED MAY 23, 2023**

Markee Davis appeals from the judgment of sentence,[1] entered in the Court of Common Pleas of Philadelphia County, after he was convicted of carrying a firearm without a license[2] and carrying a firearm in a public place in Philadelphia.[3]  On appeal, Davis challenges the trial court's denial of his pre-trial motion to suppress a firearm.  After review, we reverse the order denying suppression and vacate Davis' judgment of sentence.

---

[1] Davis' judgment of sentence was entered on August 13, 2021, by the Honorable John Padova in the Court of Common Pleas of Philadelphia County, following a non-jury trial.  Judge Padova's term expired prior to the issuance of a Pa.R.A.P 1925(a) opinion.  Accordingly, the matter was administratively reassigned to the Honorable Nicholas S. Kamau, who authored the Rule 1925(a) opinion for purposes of this appeal and concluded that Davis' suppression motion should have been granted.

[2] 18 Pa.C.S. § 6106(a)(1).

[3] 18 Pa.C.S. § 6108.

On August 8, 2018, at 5:18 PM, Davis was stopped in the 12th District by Philadelphia Police Officer Shadel Sullivan for excessive window tinting on his car, a violation of the Pennsylvania Motor Vehicle Code. N.T. Suppression Hearing, 2/16/202, at 8, 10, 12. Officer Sullivan testified that the 12th District was a high-crime area, *id.* at 8, and that he had made approximately 10-15 firearm violation arrests in that area in the past two years. *Id.* Officer Sullivan testified that when Davis rolled down his window, Officer Sullivan smelled a "very strong odor of fresh marijuana." *Id.* at 10. "At that point, [Officer Sullivan] asked [Davis] to step out of the vehicle." *Id.* Officer Sullivan then proceeded to frisk Davis, *id.*, and "immediately felt the handle of a firearm" on Davis' person. *Id.* The gun, a Smith and Wesson model SW 38, was recovered from Davis' front right pocket; Davis did not have a license for the firearm.

On August 9, 2019, Davis filed a motion to suppress arguing he was subjected to a stop and frisk on less than reasonable suspicion and, thus, the physical evidence recovered during the frisk should be suppressed.[4] *See* Motion to Suppress, 8/9/21, at 1.

_____

[4] Davis also argued that he was arrested and searched without probable cause, without a lawfully issued warrant and without other legal justification and, thus, his arrest was illegal. However, these issues were not included in his appellate brief and, thus, are abandoned on appeal.

On February 16, 2021, the court denied Davis' motion to suppress the firearm. Pursuant to Pa.R.Crim.P. 581(I),[5] Judge Padova stated on the record his reasoning for denying the motion to suppress:

> So[,] from the officer's vantage point, he was entitled to pull over [Davis]. Then [Officer Sullivan] takes []Davis out of the car and pats [Davis] down and feels a gun over the clothing in the front right pocket. And so, as a result, [Officer Sullivan] recovers the gun from the pat down outside the vehicle, which is legal according to the Pennsylvania appellate law. So[,] the [c]ourt will deny the motion to suppress.

N.T. Suppression Hearing, *supra* at 29.[6] Also on February 16, 2021, Davis proceeded to a waiver trial where the parties agreed to incorporate testimony from the suppression hearing. The court found Davis guilty of both charges. A presentence investigation report was completed and, on August 13, 2021,

_____

[5] *See* Pa.R.Crim.P. 581(I) ("At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought.").

[6] Davis claims that remand is appropriate because the suppression court's "scant findings, and complete failure to cite any legal authority, fails to comply with Rule 58[1](I)." Brief of Appellant, at 33. In *Commonwealth v. Sharaif*, 205 A.3d 1286 (Pa. Super. 2019), this Court remanded the claim for a new suppression hearing where our ability to conduct a review of the record was thwarted. In *Sharaif*, the judge at the suppression hearing did not comply with Rule 581(I), did not write a Rule 1925(a) opinion, and was no longer on the Common Pleas bench. Here, although the Rule 581(I) statement fails to cite legal authority and the judge at the suppression hearing is no longer on the Common Pleas bench, the Rule 1925(a) opinion appropriately explained the facts and legal bases used to determine whether suppression was warranted. Thus, this Court's ability to conduct appellate review was not thwarted.

the court imposed an aggregate sentence of three years of probation. Davis filed a timely notice of appeal and both he and the trial court have complied with Rule 1925. Davis raises the following claim for our review:

> Did the suppression court err when it denied [Davis'] pre-trial motion to suppress physical evidence where a gun was recovered from [Davis] during a *Terry*[7]-pat-down and the suppression record does not demonstrate that the officer had reasonable belief based upon specific and articulatable facts that [Davis] was armed and dangerous during a traffic stop?

Brief of Appellant, at 5.

This Court's standard of review of a denial of a motion to suppress is well-settled.

> [We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in context of the record as a whole. Where the suppression court's factual findings are supported by the record, [an appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 854 (Pa. 2010) (citations and quotation marks omitted).

_____

[7] *Terry v. Ohio*, 392 U.S. 1 (1969).

- 4 -

This Court has adopted the holding of *Terry* when evaluating the legality of investigative detentions. *Commonwealth v. Way*, 238 A.3d 515 (Pa. Super. 2020). In *Terry*, the United States Supreme Court held that when a police officer observes conduct that leads him to reasonably conclude, in light of his own experiences, that criminal activity may be afoot and that the suspect may be armed and presently dangerous, he is granted the authority to conduct a carefully limited search of the outer clothing of the individual for the protection of himself and others. *Id.* at 31.

> Regarding motor vehicle stops, this Court has determined that
>
> When a police officer lawfully stops a motorist for a violation of the Pennsylvania Motor Vehicle Code, the officer is permitted to ask the driver to step out of the vehicle as a matter of right. **During this investigatory stop, the officer can pat-down the driver when the officer believes, based on specific articulable facts, that the individual is armed and dangerous**. Such pat-downs, which are permissible without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly limited to that which is necessary for the discovery of weapons that might present a danger to the officer or those nearby. When assessing the validity of a pat-down[] we examine the totality of the circumstances [. . .] giving due consideration to the reasonable inferences that the officer can draw from the facts in light of his experience, while disregarding any unparticularized suspicion or hunch.

*Commonwealth v. Parker*, 957 A.2d 311, 314-15 (Pa. Super. 2008) (citations and quotations omitted) (emphasis added).

Davis concurs that he was lawfully stopped for a violation of the Pennsylvania Motor Vehicle Code and, thus, Officer Sullivan was permitted to ask Davis to step out of the vehicle. However, Davis contends that because

Officer Sullivan did not have the requisite reasonable suspicion to conduct a frisk of his person, the firearm recovered from the pat-down should be suppressed.[8]  We agree.

Instantly, Officer Sullivan's testimony evidence does not demonstrate that he reasonably believed that Davis was armed and dangerous.  Rather, Officer Sullivan specifically testified that "[d]ue to th[e] very strong odor of fresh marijuana," which he smelled when Davis rolled down his driver's side window, he asked Davis to step out of the vehicle and frisked him.  N.T. Suppression Hearing, *supra* at 11; *id.* at 10 (Officer Sullivan testifying that he smelled "fresh" or unburnt marijuana.); *id.* at 9 (Officer Sullivan testifying that he had smelled fresh marijuana "well over. . . [a] dozen" times.).  Officer Sullivan testified that his reasonable suspicion to conduct the frisk was also based on the fact that the stop took place in a high-crime area, where Officer Sullivan has made 10 to 15 firearm violation arrests in the past two years. *Id.* at 8.

Regarding the smell of marijuana, in *Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021), our Supreme Court recognized that although marijuana is not *per se* illegal in Pennsylvania due to the Pennsylvania Medical Marijuana

---

[8] Notably, the Commonwealth does not dispute that Davis is entitled to relief on appeal.  Specifically, the Commonwealth states that, "[u]nder the particular facts of this case, the record of the suppression hearing would appear to be inadequate to establish a reasonable suspicion that [Davis] was armed and dangerous."  Brief of Appellee, at i, 2, 4-5.

Act (MMA),[9] the possession of marijuana is still illegal under the Controlled Substance, Drug, Device and Cosmetic Act[10] for individuals not entitled to possess it under the MMA. *Id.* at 40. The *Barr* Court held that "the odor of marijuana may be **a factor**, but not stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search." *Id.* at 41 (emphasis added). Accordingly, marijuana is only one factor in a probable cause analysis.

This Court has applied the reasoning in *Barr* to reasonable suspicion analyses.[11],[12] In *Commonwealth v. Johnson*, 281 A.3d 1055 (Pa. Super. 2022) (non-precedential decision) (Table) the defendant was stopped in a "violent" area at 8:50 p.m. during the month of May for driving with his car's driver-side headlight out and high-beams on. *Id.* at 2. This Court found that the officer did not have reasonable suspicion to conduct *Terry*-frisk where there was an odor of marijuana emanating from the vehicle and the defendant

---

[9] 35 P.S. §§ 10231.101-10231.2110.

[10] 35 P.S. §§ 780-101-114.

[11] *See Commonwealth v. Dabney*, 247 A.3d 1283, 1293 (Pa. Super. 2022) (assuming, *arguendo*, that *Barr* applies to a determination of reasonable suspicion for an investigative detention in DUI context); *Commonwealth v. Lomax*, 273 A.3d 1049 (Pa. Super. 2022) (non-precedential decision) (Table) (applying the reasoning in *Barr* to a reasonable suspicion analysis in DUI context).

[12] Pursuant to Pa.R.A.P. 126, unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019 may be cited for their persuasive value.

was shaking and breathing heavily. *Id.* Additionally, the officer did not ask the defendant about the marijuana odor prior to performing the frisk. *Id.* at 3.[13] Applying *Barr*, this Court reasoned that "marijuana precipitated [the officer's] decision to order [defendant] out of the car and frisk him," and, thus, the frisk was illegal. *Id.* at 15-16.

This Court has found reasonable suspicion to conduct a *Terry-*frisk where the officer detects marijuana **and** the defendant makes fruitive movements.[14] In *Commonwealth v. Poellnitz*, 237 A.3d 475 (Pa. Super. 2020) (non-precedential decision) (Table), this Court found reasonable suspicion where defendant was stopped for driving without his headlights on and the officer requested that defendant exit the vehicle upon smelling marijuana. The officer testified that his reasonable suspicion, formed once the defendant was outside of the vehicle, was based on smelling marijuana on the defendant, defendant's furtive movements, and defendant's noncompliance with the officer's requests. *Id.* at 7 (Officer testifying that "[Defendant] kept putting his hands in his pockets. He had a strong smell of marijuana on his person. It made me nervous."); *id* at 9 (Officer testifying

_____

[13] In *Johnson*, *supra*, the officer found no weapons as a result of the frisk but saw a firearm on the driver's side floorboard upon returning the defendant to the vehicle. *Id.* at 2-3. This Court vacated Johnson's sentence and remanded the case reasoning that the officer did not see the firearm until after the frisk, which was not supported by reasonable suspicion, and, thus, the officer did not observe the gun in plain view. *Id.* at 15.

[14] Although *Poellnitz*, *infra* and *Brown*, *infra* were decided prior to *Barr*, *supra*, they are consistent with the analysis regarding totality of the circumstances articulated in *Barr*.

that "I told [defendant] a couple times to take his hands out of his pockets. He kept reaching in his pockets.").

On the other hand, in **Commonwealth v. Brown**, 241 A.3d 475, 12 (Pa. Super. 2020) (non-precedential decision) (Table),[15] this pre-**Barr** Court did not find reasonable suspicion where the defendant, one of three occupants in the vehicle, was stopped at 9:50 p.m. in a high-crime area because officers could not read the date on the temporary-registration tag in the rear window and the car was not on record in the PennDOT database. **Id.** at 1-3. During the stop, the two officers smelled marijuana, asked defendant and other passengers to exit the vehicle, conducted a frisk of the vehicle's occupants and recovered a firearm on defendant's person. **Id.** at 4. In reversing denial of suppression, this Court reasoned that, "[t]he police may not frisk an individual, simply because they take him out of his car." **Id.** at 13. The Court focused on the **lack of evidence** demonstrating that defendant was armed and dangerous, including that defendant did not make any furtive movements and there were no visibly apparent firearms or bulges in the man's clothing. **Id.** at 12.

Here, as in **Johnson**, the smell of marijuana precipitated the frisk. Additionally, similarly to **Brown**, the record reveals no testimony indicating

---

[15] In **Brown**, **supra**, the officer who performed the frisk did not testify. **Id.** at 8. Additionally, the other officer testified that it is routine practice for the Philadelphia police to frisk everyone whom they ask to exit a vehicle. **Id.** at 4-5.

that Davis made any furtive movements that caused Officer Sullivan to believe Davis posed a safety threat or that there were firearms visible either on Davis' person or in his vehicle. Further, unlike in **Poellnitz**, testimony indicates that Davis complied with Officer Sullivan's request to step out of the vehicle.

Moreover, the nature of the location of the stop and the officer's previous arrests made in the same area and the time of day are not facts particular to Davis. **Brown**, **supra** at 11, 15-16 ("Being in a high[-]crime or high[-]gun neighborhood at 9:50 p.m. does not indelibly brand everyone in that neighborhood as a danger to the police or others."). Further, we highlight that this traffic stop occurred at 5:18 p.m. during the month of August while it was still light out. N.T. Suppression Hearing, **supra** at 10, 12 (Officer Sullivan testifying that it was light out when the stop and frisk occurred). If driving at night in a high-crime area does not create reasonable suspicion that an individual is armed and dangerous, **Brown**, **supra** at 16, it is axiomatic that driving during daylight hours does not either.

Giving due consideration to the reasonable inferences that Officer Sullivan could have drawn from the facts in light of his experience, the Commonwealth's evidence still lacks the particularized facts needed to conclude that Officer Sullivan possessed the requisite reasonable suspicion to conduct a pat-down of Davis. **See Parker**, **supra**. Accordingly, we reverse the order denying Davis' motion to suppress, vacate his judgment of sentence, and remand for proceedings consistent with this memorandum.

Judgement of sentence vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2023